First Federal Savings Bank, demandante y recurrente, *v.* Carlos Nazario González et als., demandados y recurridos.

Número: RE-92-537 Resuelto: 30 de junio de 1995

*Luis Berríos Amadeo*, de *Cancio, Nadal & Rivera*, abogado del recurrente; *María del P. Terrasa* y *Elmer L. Cuerda Acevedo*, de *Servicios Legales de Puerto Rico, Inc.*, abogados de los recurridos.

EL JUEZ PRESIDENTE SEÑOR ANDRÉU GARCÍA emitió la opinión del Tribunal.

La recurrente, First Federal Savings, acude ante nos para que revisemos la sentencia dictada por el Tribunal Superior, Sala de Mayagüez (Hon. Manuel J. Vera Vera, Juez) mediante la cual se declaró con lugar una demanda de cobro de dinero a favor del mencionado banco por la suma de $17,092.12. Sin embargo, el tribunal resolvió que el pagaré hipotecario que garantizaba dicha obligación, el cual fue otorgado por los recurridos a favor de la recurrente, era nulo. Según veremos, para resolver el presente recurso tendremos que determinar si el pleito que origina el mismo conlleva reclamaciones múltiples que justifiquen una sentencia parcial final en cuanto a una de éstas, según dispone la Regla 43.5 de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III). Examinemos los hechos que dieron lugar a la controversia legal sobre la cual hoy nos expresamos.

# I

La Sra. Wanda Iris Alers Quiñones y su esposo el Sr. Carlos Nazario, recurridos en el presente pleito, iniciaron gestiones en el First Federal Savings (en adelante First Federal) para obtener un préstamo que sería utilizado para la compra de una vivienda. Durante el trámite para conseguir el referido préstamo, el banco se percató de que la Administración de Veteranos había dictaminado que el señor Carlos Nazario tenía un 100% de incapacidad mental.([1]) Debido a la supuesta incapacidad del recurrente, el banco le requirió a la señora Alers Quiñones, como condición para obtener el préstamo hipotecario, que obtuviera una declaración judicial de incapacidad de su esposo y que, además, gestionara una autorización judicial para poder llevar a cabo la transacción financiera que gestionaba con el banco, todo ello conforme con las disposiciones pertinentes en los Arts. 212, 183 y 168 del Código Civil de Puerto Rico, según enmendados, 31 L.P.R.A. secs. 786, 706 y 662.

En vista de ello, la recurrida inició los trámites judiciales, ex parte, para cumplir con los requisitos legales señalados por el First Federal. El Tribunal Superior, Sala de Mayagüez, dictó una orden mediante la cual designó a la señora Alers Quiñones tutora legal de su esposo, a los únicos efectos de llevar a cabo las transacciones aquí descritas.([2])

Así las cosas, el banco aprobó la transacción y los esposos recurridos obtuvieron el inmueble que constituyó el hogar del matrimonio. Sobre dicho bien constituyeron una

---

([1]) Según los facultativos médicos de dicha agencia federal, el recurrido padecía de esquizofrenia no diferenciada. Los psiquiatras que le atendieron concluyeron que dicha enfermedad resultó ser el producto, al menos en parte, de sus experiencias en el conflicto bélico de Vietnam.

([2]) Dicha orden fue el producto de las alegaciones hechas por la señora Alers Quiñones, las cuales fueron "aceptadas" por el Fiscal. El Juez no tuvo el beneficio de evidencia testifical y/o documental antes de emitir la aludida orden.

hipoteca a favor del First Federal en garantía de un pagaré por la cantidad de $27,400, la cual fue debidamente inscrita en el Registro de la Propiedad.

Tiempo después, los esposos recurridos incumplieron con su obligación de pago, razón por la cual la institución financiera inició el trámite judicial de ejecución de hipoteca por la *vía ordinaria.*

El 27 de agosto de 1990 la Sala que atendió el caso dictó una "sentencia parcial final" mediante la cual resolvió que era nula la orden del tribunal en la que se designó a la señora Alers Quiñones tutora de su esposo y la autorizó a llevar a cabo las mencionadas transacciones financieras. Fundamentó tal decisión en que dicha orden no fue precedida por declaración judicial de incapacidad, conforme al procedimiento establecido por ley en el Art. 183 del Código Civil, *supra.* A esos efectos, el juez de instancia resolvió que tanto la hipoteca como el pagaré hipotecario eran nulos. No obstante, el tribunal apercibió a First Federal sobre el derecho que tenía a reclamar el alegado crédito hipotecario mediante una acción ordinaria de cobro de dinero.

Al resolver que no procedía la ejecución de la hipoteca, el tribunal de instancia consideró que estaba disponiendo de una de varias reclamaciones que supuestamente incluía el pleito que tenía ante su consideración. A esos efectos, y al amparo de la citada Regla 43.5 de Procedimiento Civil de 1979, el tribunal ordenó el registro en autos de la sentencia parcial dictada haciendo constar que no existía razón para posponer dicho acto hasta la resolución total del pleito.

Así las cosas, el tribunal dictó una nueva sentencia el 12 de agosto de 1992, en la cual dispuso totalmente del caso al condenar a los demandados y a la sociedad legal de gananciales constituida por ambos al pago de la cantidad reclamada. En esta nueva sentencia el magistrado indicó

que a pesar de que la "sentencia parcial final" dictada el 27 de agosto de 1990 pudiera ser errónea,[3] la misma había advenido final y firme ya que la parte demandante no recurrió de la misma. Debido a ello, el tribunal entendió que estaba obligado por la disposición hecha en dicha sentencia parcial en torno a la supuesta nulidad de la hipoteca y que solamente tenía jurisdicción para disponer de la acción personal ordinaria de cobro de dinero.

En su nueva sentencia final, el tribunal determinó que las partes utilizaron el producto del préstamo para la compra del hogar de los cónyuges. En vista de ello concluyó que dicho préstamo se hizo en beneficio de la familia y, por lo tanto, la sociedad legal de gananciales quedó obligada por el mismo. Véanse: *Banco de Ahorro del Oeste v. Santos*, 112 D.P.R. 70 (1982); *Pauneto v. Núñez*, 115 D.P.R. 591 (1984).

Inconforme con la determinación del tribunal, el First Federal recurre ante nos y aduce la comisión de dos errores. En primer lugar argumenta que la llamada "sentencia parcial" era en verdad una *resolución* del tribunal, ya que ésta no resolvía "reclamación" alguna. Por ende, aduce que nosotros no estamos en posición de revisar lo que en ella se dispuso porque los pronunciamientos contenidos en la misma nunca formaron parte de una sentencia final. Propone el First Federal, además, que el tribunal incidió al declarar nula la hipoteca. Fundamenta su posición en los pronunciamientos hechos por esta Curia en *Trabal Morales v. Ruiz Rodríguez*, 125 D.P.R. 340 (1990).

Luego de evaluar el recurso presentado, concedimos término a la parte recurrida para que mostrara causa por la cual no debíamos devolver el caso a instancia para que volviese a pasar juicio sobre el aspecto de la nulidad de la hipoteca. La parte recurrida ha comparecido. Resolvemos.

---

[3] El tribunal llegó a dicha conclusión luego de un análisis de nuestros señalamientos en *Cordero Crespo v. Registrador*, 88 D.P.R. 826 (1963), y en *Trabal Morales v. Ruiz Rodríguez*, 125 D.P.R. 340 (1990). Véase Nota Núm. 1 de la Sentencia del tribunal dictada el 12 de agosto de 1992, Civil Núm. I-CD89-0264.

## II

■ La recurrente nos argumenta que el juez de instancia nunca dispuso de "reclamación" alguna en la sentencia parcial dictada el 27 de agosto de 1990, por lo que tal sentencia no constituyó una adjudicación final con el potencial de convertirse en firme.[4] Tiene razón.

La Regla 43.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III, en lo relevante al caso de autos indica lo siguiente:

> *Cuando un pleito comprenda más de una reclamación*, ya sea mediante demanda, reconvención, demanda contra coparte o demanda contra tercero o figuren en él partes múltiples, el tribunal podrá dictar sentencia final en cuanto a una o más de las reclamaciones o partes sin disponer de la totalidad del pleito, siempre que concluya expresamente que no existe razón para posponer dictar sentencia sobre tales reclamaciones hasta la resolución total del pleito, y siempre que ordene expresamente que se registre sentencia.
>
> Cuando se haga la referida conclusión y orden expresa, la sentencia parcial dictada será final para todos los fines en cuanto a la controversia en ella adjudicada, y una vez sea registrada y se archive en autos copia de su notificación, *comenzará a correr en lo que a ella respecta los términos dispuestos en las Reglas 47, 48 y 53.* (Énfasis suplido.) En cuanto a la aplicación de esta regla véanse, en general: *Díaz v. Navieras de P.R.*, 118 D.P.R. 297 (1987); *Camalegio v. Dorado Wings, Inc.*, 118 D.P.R. 20 (1986); *Asociación de Propietarios v. Santa Bárbara Co.*, 112 D.P.R. 33 (1982); *Cortés Román v. E.L.A.*, 106 D.P.R. 504 (1977); *Dalmau v. Quiñones*, 78 D.P.R. 551 (1955).

La regla que acabamos de invocar no define lo que es una "reclamación". Como nunca nos hemos expresado en cuanto a ese término dentro del contexto de la referida regla, revisaremos los pronunciamientos que en torno a dicho tema se han hecho sobre la Regla 54(b) de Procedi-

---

[4] "...una sentencia es final o definitiva cuando resuelve el caso en sus méritos y termina el litigio entre las partes, en tal forma que no queda pendiente nada más que la ejecución de la sentencia." *Dalmau v. Quiñones*, 78 D.P.R. 551, 556 (1955), citado con aprobación en *Pueblo v. Hernández Maldonado*, 129 D.P.R. 472 (1991); *Cárdenas Maxán v. Rodríguez*, 119 D.P.R. 642 (1987); *Camalegio v. Dorado Wings, Inc.*, 118 D.P.R. 20, 26 (1986).

miento Civil federal de la cual surge nuestra Regla 43.5(b), resultando ser idénticas.

En el caso de *Reeves v. Beardall*, 316 U.S. 283, 286 (1942), el Tribunal Supremo de Estados Unidos original-mente determinó que existían reclamaciones múltiples, dentro del contexto de la Regla 54(b), cuando *cada una* de las alegadas reclamaciones surgía de transacciones que eran absolutamente distintas y separadas.

La experiencia en la jurisdicción federal al aplicar la llamada doctrina de la "transacción" creó grandes confusio-nes, puesto que resultaba complicado determinar si los he-chos esenciales dentro de una u otra supuesta reclamación eran completamente distintos. Véanse: Nota, *Federal Courts—Appeals—Federal Rule 54(b) and the Final Judg-ment Rule*, 47 (Núm. 2) Mich. L. Rev. 233, 235–236 (1948); 6 *Moore's, Federal Practice* Sec. 54.24 (2da ed. 1953); Nota, *Federal Rule 54(b): The Multiple Claims Requirements*, 43 (Núm. 2) Va. L. Rev. 229, 231 (1957); *Moore's Federal Prac-tice*, supra, Vol. 6, Sec. 54.33[2].

Como consecuencia de esa situación, el Tribunal Su-premo de Estados Unidos, a través de sus opiniones en *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427 (1956), y *Cold Metal Process Co. v. United Co.*, 351 U.S. 445 (1956), revocó la doctrina de *Reeves v. Beardall*, supra. A pesar de la ambigüedad que reflejó el Tribunal en *Sears, Roebuck & Co. v. Mackey*, supra, y en *Cold Metal Process Co. v. United Co.*, supra, en torno a la metodología utilizada para deter-minar si en dichos casos existían reclamaciones múltiples, los tratadistas han expresado que la misma está funda-mentada en lo que se ha caracterizado como *la doctrina de los remedios múltiples*, la cual, a su vez, tiene su génesis en casos resueltos por el Tribunal Federal de Apelaciones para el Segundo Circuito. Véanse: Nota, *Federal Rule 54(b): The Multiple Claims Requirement*, supra, pág. 234. 10 *Wright, Miller and Kane, Federal Practice and Proce-*

*dure: Civil 2d* Sec. 2657, pág. 62 (1983); *Judgements and Orders*, 21 Fed. Pro. L. Ed. Sec. 51:72o, págs. 503–505.

La doctrina de los remedios múltiples (*Multiple Claims*) indica:

> A single claimant presents multiple claims for relief under the Second Circuit's formulation when his possible recoveries are more than one in number *and not mutually exclusive* or, stated another way, when the facts give rise *to more than one legal right* or cause of action. (Énfasis suplido y escolio omitido.) *Wright, Miller and Kane,* supra, pág. 67. Véanse, en general: *Higgins v. Shenango Pottery Company,* 256 F.2d 504, 508 (3er Cir. 1958); *Avondale Industries Inc. v. Travelers Indem. Co.,* 123 F.R.D. 80, 82 (1988); *Pioneer Operations Co. v. Brandeberry,* 789 P.2d 1182 (Kan. 1990).

A manera de ejemplo, en el caso *Sears, Roebuck & Co. v. Mackey,* supra, el demandado pudo haber sido hallado simultáneamente responsable no sólo bajo los preceptos de las leyes antimonopolísticas, sino bajo las disposiciones del derecho común. El hecho de que el tribunal determinase que el demandado tenía que responder bajo las leyes antimonopolísticas no impedía que ese mismo tribunal resolviese que procedía un remedio adicional asentado en el derecho común, a pesar de que ambas acciones estaban fundamentadas en hechos similares. En otras palabras, de los hechos alegados surgía o se originaba más de una causa de acción.

Luego de analizar la citada jurisprudencia federal, somos del criterio que en el caso de marras no procedía que se dictara sentencia parcial final según dispone la Regla 43.5 de Procedimiento Civil de 1979, *supra.* Veamos.

## III

La acción de ejecución de hipoteca por la vía ordinaria es de naturaleza mixta: la personal y la real. *C.R.U.V. v. Torres Pérez,* 111 D.P.R. 698, 699 (1981). El

acreedor puede optar por tratar de obtener la satisfacción de la sentencia que sea dictada en reconocimiento de su crédito mediante requerimiento personal al deudor o mediante la ejecución de la garantía hipotecaria. *P.R. Prod. Credit Assoc. v. Registrador*, 123 D.P.R. 231 (1989). Por lo tanto, cuando el deudor y el propietario del bien hipotecado es la misma persona, la acción personal está inmersa en la acción real de ejecución de hipoteca por la vía ordinaria, por lo que las mismas son "mutuamente excluyentes". *P.R. Prod. Credit Assoc. v. Registrador*, supra, pág. 246. En tal caso, el reclamante tendrá derecho a un solo remedio, esto es, el pago de lo adeudado. El hecho de que dicha reclamación pueda hacerse efectiva mediante *el pago personal* de la deuda o mediante *la ejecución de la hipoteca* no significa que las demandas presentadas para ello contenga múltiples reclamaciones. El banco demandante en este caso no tiene derecho a *un remedio adicional e independiente* de su derecho a obtener el pago de la deuda reclamada. Nos enfrentamos en realidad a un mismo remedio: la condena al pago del crédito reclamado.[5]

En resumen, a pesar de las marcadas diferencias entre la acción personal y la acción real, las mismas *"aparecen por lo general confundidas ... cuando coincide el propietario de la finca hipotecada y el deudor personal"*. R.M. Roca

---

[5] Ahora bien, podría darse la situación de que tanto la acción personal como la real se pudiesen ejercitar *y que para propósitos de nuestra Regla 43.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III, cada una de esas acciones representase una reclamación.* Véase, en general, *Calo Rivera v. Reyes*, 115 D.P.R. 123, 127 (1984). Nos referimos a la situación particular en que el deudor personal y el propietario de la cosa hipotecada son dos personas distintas. En su obra, Roca Sastre, al citar a *Hademan* señala que:

"... de la yuxtaposición inicial en la relación jurídica compuesta del crédito-hipotecario, de conjunción de la obligación 'personal' y la responsabilidad 'hipotecaria', se sigue la posibilidad de que sean *personas distintas el deudor personal y el propietario hipotecariamente responsable.* ... Por todo lo dicho se infiere la dualidad de dichas acciones, por cuanto el acreedor tiene una doble posición jurídica, de una parte real, a base de la relación jurídica hipotecaria, de otra obligacional, a base del crédito personal." (Énfasis en el original.) R.M. Roca Sastre, *Derecho Hipotecario*, 7ma ed., Barcelona, Ed. Bosch, 1979, T. IV, Parte 2, pág. 1035.

En esta situación procedería que se dictara sentencia parcial ya que estaríamos ante partes múltiples: el deudor personal y el propietario del bien hipotecado.

Sastre, *Derecho Hipotecario*, 7ma ed., Barcelona, Ed. Bosch, 1979, T. IV, Parte 2, págs. 1035–1036. Véase, además, *P.R. Prod. Credit Assoc. v. Registrador*, supra. El caso de autos se circunscribe a esta última situación. Los esposos recurridos son propietarios de la finca hipotecada y deudores personales a la misma vez. Por consiguiente, ambas acciones, es decir la real y la personal, *quedaron confundidas* dentro de la acción hipotecaria ordinaria. Esta acción, la cual consideramos como *una acción mixta*, representa para efectos de la Regla 43.5 de Procedimiento Civil, *supra*, una sola reclamación.

### III

 Surge de nuestra discusión que la sentencia parcial dictada por el tribunal el 27 de agosto de 1990 no constituía una adjudicación final a los fines dispuestos por la citada Regla 43.5 de Procedimiento Civil, ya que la misma no dispuso en forma completa de la única reclamación hecha en la demanda instada en este caso.[6] Nos encontramos en realidad ante una resolución interlocutoria del tri-

---

[6] Resulta irrelevante el hecho de que el tribunal haya expresado de manera específica que no existía razón para posponer dictar la "sentencia" y que a esos efectos ordenase su registro en autos. *Camaleglo v. Dorado Wings, Inc.*, supra, si dicho dictamen no cumplió con todos los requisitos dispuestos por la citada Regla 43.5.

En las cortes estatales de Estados Unidos y de los diversos circuitos del sistema federal se han adoptado varios criterios que originalmente fueron esbozados por la Corte de Apelaciones del Tercer Circuito en *Allis-Chalmers Corp. v. Philadelphia Electric Co.*, 521 F.2d 360 (3er Cir. 1975), y que deben ser tomados en consideración por el juez de instancia para determinar si verdaderamente no existe razón por la cual no se debe posponer el dictar sentencia parcial. A continuación un listado no taxativo de esos criterios: (1) la relación que existe entre la reclamación adjudicada y las que todavía queden pendiente; (2) la posibilidad de que la necesidad de revisión se pueda tornar académica como consecuencia de acontecimientos futuros dentro del pleito; (3) la posibilidad de que la corte que revisa pueda estar obligada a considerar la misma controversia una segunda ocasión; (4) la presencia de una reclamación o una contra-reclamación que pueda resultar si en compensación (*set-off*) de la sentencia parcial contemplada, y (6) consideraciones misceláneas como atrasos, cuestiones económicas o de solvencia, el hecho de que una contra-reclamación sea frívola, etc. Véase Anotación, *Modern Status of State Court Rules Governing Entry of Judgement on Multiple Claims*, 80 A.L.R.4th 707 (1990).

bunal, a la cual no es de aplicación el término para la revisión de las sentencias dispuesto por la Regla 53.1(b) de Procedimiento Civil, 32 L.P.R.A. Ap. III.

Debido a ello, First Federal no tenía obligación de acudir ante nos mediante el correspondiente recurso de revisión hasta tanto no se resolviera la totalidad del pleito. *Díaz v. Navieras de P.R.*, supra; *Cortés Román v. E.L.A.*, supra. Véase, además, *Asociación de Propietarios v. Santa Bárbara Co.*, supra. Habiéndose recurrido en tiempo de la sentencia final que adjudicó totalmente la reclamación instada en el pleito, tenemos jurisdicción para revisar lo resuelto por el tribunal de instancia mediante su mal denominada Sentencia Parcial de 27 de agosto de 1990.

## IV

Como ya hemos expuesto, el tribunal de instancia, mediante la antes mencionada sentencia parcial, determinó que la hipoteca constituida por la señora Alers Quiñones no era válida ya que ella no tenía capacidad jurídica para comparecer como representante de su esposo. Más aún, concluyó que al éste no comparecer al otorgamiento de la escritura, se incumplieron los requisitos exigidos por el Código Civil para las enajenaciones de bienes inmuebles pertenecientes a la sociedad legal de gananciales. Por lo tanto, determinó erróneamente que dicha escritura de hipoteca carecía de validez.

■ Desde hace mucho tiempo hemos resuelto que los actos de un tutor, cuyo nombramiento está avalado judicialmente, no pueden ser anulados por razón de que posteriormente se deje sin efecto la orden decretando su nombramiento. *Domínguez v. Nadal Vda. de Del Moral*, 47 D.P.R. 590, 596 (1934); *Domínguez v. Nadal Vda. de Del Moral*, 45 D.P.R. 471, 495 (1933). Estos casos se originaron cuando decretamos la nulidad del nombramiento de tutor hecho por la anterior Corte de Distrito de Mayagüez (hoy

Tribunal de Primera Instancia, Sala Superior) a favor de uno de los hijos de la incapacitada —quien no era el mayor de los hijos de ésta— en contravención con las disposiciones del Art. 256 del Código Civil de 1902. Sin embargo, ese hecho no lo conocía el tribunal al momento en que designó al peticionario como tutor de su madre incapacitada. Veáse *Del Moral v. Corte*, 41 D.P.R. 523 (1930).

Antes de que se decretara nulo dicho nombramiento, el señor Del Moral (tutor) había realizado varias gestiones a nombre de su madre, entre las cuales se encontraba la presentación de un procedimiento ejecutando un crédito hipotecario a su favor. Habiendo obtenido el tutor la correspondiente sentencia para la ejecución de dicho crédito, el deudor hipotecario impugnó en la apelación instada ante nos el procedimiento de ejecución por diversas razones, una de las cuales era *la falta de capacidad del señor Del Moral para actuar como tutor de su madre. Domínguez v. Nadal Vda. de Del Moral*, 45 D.P.R. 471 (1933). En cuanto a esta controversia en particular, este Tribunal entendió que las actuaciones del señor Del Moral, *mientras duró su tutela*, no podían ser despojadas de validez legal. Este había obtenido autorización judicial previa para tramitar la ejecución de la hipoteca. A esos efectos se estableció:

> Aún admitiendo que Francisco del Moral no podía desempeñar las funciones de tutor general, cuando se inició y ultimó el procedimiento ejecutivo, siempre tendríamos que la corte inferior concedió autorización a dicho señor para cobrar el préstamo hipotecario por la vía sumaria. *El Sr. del Moral solicitó este permiso de la corte, y si ésta, después de haberse penetrado del propósito que se perseguía, autorizó a dicho señor del Moral para que ejercitase el procedimiento mencionado en beneficio de la incapacitada, entendemos que no procede declarar nulo dicho procedimiento*, por el hecho de que el hijo mayor de doña Carmen no hubiese sido nombrado todavía tutor general de la misma. *Domínguez v. Nadal Vda. de Del Moral*, 45 D.P.R. 471, 495 (1933).

Posteriormente, se solicitó reconsideración de dicha decisión (*Domínguez v. Nadal Vda. de Del Moral*, 47 D.P.R.

590 (1934)) en cuanto al efecto de la nulidad del nombramiento de tutor. Luego de un análisis comparativo sobre dicho asunto,([7]) se declaró no ha lugar la reconsideración. Nuevamente se expresó que "[e]sta corte, por cuestiones de procedimiento, anuló la orden designando a Francisco Del Moral tutor de la incapacitada, pero nuestra resolución no puede tener la trascendencia de anular todos los actos realizados en ejercicio de la tutela por este señor, quien hasta la fecha de pronunciarse nuestra sentencia actuó como tutor de la referida incapacitada". *Domínguez v. Nadal Vda. de Del Moral*, 47 D.P.R. 590, 596 (1934).([8])

■ Obtener autorización judicial para los efectos de realizar una enajenación de bienes inmuebles pertenecientes a personas que carecen de capacidad jurídica para efectuar dicha transacción es un requisito primordial establecido en el Art. 212 de nuestro Código Civil, *supra*. "La autorización judicial es necesaria precisamente por esas posibles repercusiones que tales actos pueden tener sobre la persona o el patrimonio del tutelado, por su mayor trascendencia, por su eventual perjuicio o consecuencias desfavorables; todo lo cual justifica que el tutor no pueda por si solo decidir en semejantes casos y necesite de la intervención del juez." M. Amorós Guardiola, *Comentarios a las reformas de nacionalidad y tutela*, Madrid, Ed. Tecnos, 1986,

---

([7]) Se realizó un estudio comparativo de jurisprudencia norteamericana ya que no se encontró expresión alguna en tratadistas ni en jurisprudencia española. *Domínguez v. Nadal Vda. de Del Moral*, 47 D.P.R. 590, 595–597 (1934).

Hoy en día existen en España figuras alternas que podrían utilizarse para controversias como la presente. Estas se conocen como la "guarda de hecho" y la "curatela". Véanse, entre otros: A. Ventoso Escribano, *La reforma de la tutela*, Madrid, Ed. Colex, 1985; *Comentarios a las reformas de nacionalidad y tutela* (1986); C. Rogel Vide, *La guarda de hecho*, Madrid, Ed. Tecnos, 1986; A. Majada, *La incapacitación, la tutela y sus formularios*, Barcelona, Ed. Bosch, 1985. Aún cuando dichas figuras serían de ayuda a la solución de este caso, decidimos no utilizarlas ya que el legislador, al revisar nuestro Código Civil, no las incorporó al mismo.

([8]) En apoyo a esta determinación se explicó que si no podía considerársele tutor general, podría por lo menos ser defensor judicial o tutor de facto. Esta figura, cuya aplicación en equidad es aceptada, asume las funciones de un tutor, teniendo bajo su custodia al pupilo y sus bienes. *Domínguez v. Nadal Vda. de Del Moral*, supra, pág. 597.

Vol. 1, pág. 541. La falta de previa autorización judicial constituye un defecto no subsanable. *Hidalgo v. Registrador*, 37 D.P.R. 477, 482 (1927); *Del Rosario et al. v. Rucabado*, 23 D.P.R. 473, 486 (1916). Véase, también, C.E. Mascareñas, *La tutela en el derecho puertorriqueño*, Año IV (Núm. 15) Rev. Der. Pur. 181, 207 (1965).

El hecho de que un tribunal con jurisdicción sobre la persona del pupilo otorgue su autorización para que el tutor de éste pueda realizar ciertas funciones brinda certeza y confiabilidad al referido proceso.[9] Al obtener dicho consentimiento, "el ámbito de poder del representante se limita o perfila mediante diversas cortapisas" provistas por la institución encargada de velar por el bienestar de los incapacitados". E. Vázquez Bote, *Derecho privado puertorriqueño*, Oxford, Butterworth, T. IV, 1992, pág. 286.

Tomando en consideración lo anteriormente expuesto, es obligado concluir que, habiendo la señora Alers Quiñones obtenido autorización judicial para otorgar la referida hipoteca como tutora de su esposo, la misma es válida, aún cuando su nombramiento como tutora pueda haber sido nulo.[10] Esta transacción fue hecha en beneficio del señor Nazario y así fue refrendada mediante la aprobación de la misma por el Tribunal Superior en su Resolución de 8 de febrero de 1980.

Según anticipó el tribunal de instancia en su "sentencia final", la declaración de nulidad de la hipoteca fue equivocada. La misma estuvo bien constituida, ya que la señora Alers Quiñones compareció a nombre propio y como tutora de su esposo, conforme a la orden emitida por el tribunal a esos efectos. Mas, por razón de que los deman-

---

[9] Ahora bien, mediante la misma sólo se ponderan las consecuencias del acto a realizarse desde el punto de vista del beneficio a brindársele al pupilo. La validez y eficacia del negocio u acto en sí no será objeto del escrutinio judicial en esa etapa. J. Gil Rodríguez, *Comentario del Código Civil*, 1991, Vol. I, pág. 799.

[10] Sobre este particular, no pasamos juicio hoy, por no estar el mismo ante nuestra consideración. Además, la misma no es determinante para nuestra decisión.

dados incumplieron con los términos acordados en la misma, ésta se torna exigible y ejecutable.

*Se dictará sentencia dejando sin efecto la sentencia parcial en cuanto a la declaración de nulidad de la escritura y el pagaré hipotecario, y se ordenará proceder a la ejecución del mismo.*

El Juez Asociado Señor Rebollo López concurrió con el resultado sin opinión escrita.