# 2008 DTA 69

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE CAGUAS**
**(PANEL XII)**

MONTICIELO, S. E.
Recurrida

v.

ASOCIACIÓN DE RESIDENTES DE LA URB. MONTICIELO
Peticionaria

Núm. KLAN-08-00383

San Juan, Puerto Rico, a 6 de mayo de 2008

Panel integrado por su Presidenta, la Juez Pesante Martínez,
y los Jueces Escribano Medina y Hernández Torres

Hernández Torres, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Comparece ante nos mediante recurso de apelación, [1] la Asociación de Residentes de la Urb. Monticielo, en adelante, la peticionaria, solicitando la revisión de una Sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Caguas. Mediante dicho dictamen, el tribunal a quo concedió una Solicitud de Hacer o No Hacer instada por Monticielo, S.E., en adelante, la recurrida.

Por las razones que esbozamos a continuación, se expide el auto solicitado y se revoca la Sentencia apelada.

### I

Conforme surge del expediente ante nuestra consideración, el 29 de febrero de 2008, la recurrida instó una Demanda sobre acción civil contra la peticionaria. La recurrida es una sociedad especial organizada bajo las leyes de Puerto Rico, la cual desarrolló y construyó la urbanización conocida como "*Monticielo*" sita en el Municipio de Caguas. La urbanización está regida por unas condiciones restrictivas otorgadas mediante Escritura Pública Núm. 169 de 9 de septiembre de 2002, ante el Notario Público Mario M. Oronoz, la cual consta inscrita al Folio 215 del Tomo 1706 del Registro de la Propiedad de Caguas, inscripción 24.

En la Demanda se alegó que la peticionaria había presentado acción contra el señor Carlos García y su esposa por el pago de ciertas cuotas de mantenimiento alegadamente adeudadas de su residencia. [2] Se señaló que la peticionaria, "*de forma inexplicable y negligente demandó a una parte que no responde por dicha causa de acción, aun cuando prevalezca en la misma*". Se planteó que lo anterior se debía a que el señor Carlos García no era el titular de la propiedad objeto del cobro de las cuotas de mantenimiento.

Surge del escrito, la recurrida fue propietaria de la unidad J-9 hasta el 22 de febrero de 2008, fecha en que se la vendió a Aida Luz Valle Mass y su esposo, Oscar López López, mediante la Escritura Núm. 11 de Segregación, Liberación de Hipoteca y Compraventa otorgada en esa fecha ante el ante el Notario Público Mario M. Oronoz. A la fecha de la compraventa, la recurrida adeudaba cuotas de mantenimiento por la unidad J-9 ascendentes a $6,250, correspondiente a 50 meses a razón de $125 por mes. Dicha cantidad, según se expuso en la Demanda del caso de autos, fue consignada en la fecha de la presentación del escrito.

Sobre el petitorio de la recurrida, se apuntó en la Demanda:

"...

6. *La presente demanda se presenta con carácter urgente, dado que la Asociación de Residentes de la Urb. Monticielo (peticionaria), en una clara actuación ultra vires y a pesar de haber instado un pleito para el cobro de las cuotas alegadamente adeudadas, no ha aceptado a los adquirentes de la propiedad J-9 (esposos López-Valle) como miembros de la Asociación (peticionaria), les ha negado la entrega de los "beepers" que da acceso a su casa a través de los portones de seguridad de la urbanización; han amenazado con impedirle el acceso al camión de la mudanza que los adquirentes han coordinado para este sábado 1º de marzo de 2008; y finalmente se han negado a proveerle a los adquirentes la dirección postal de su residencia ni el acceso al apartado postal.*

7. ...

8. *Además, la Asociación de Residentes (peticionaria) adeuda a la aquí compareciente, Monticielo (recurrida), la cantidad ascendente a $65,876.00 por pagos realizados por concepto de gastos de mantenimiento de la Urbanización Monticielo. Estos gastos fueron satisfechos por Monticielo (recurrida), dado que miembros de la Asociación (peticionaria), de forma morosa, incumplieron su deber de pago de cuotas de mantenimiento. La cantidad aquí reclamada constituye el balance adeudado por miembros de la Asociación (peticionaria) al momento de la transición de entrega del proyecto por parte del desarrollador Monticielo (recurrida) a la Asociación de Residentes (peticionaria).*

9. *Como indicamos en el párrafo quinto que precede, conjuntamente con esta demanda se está presentando una moción de consignación ascendente a $6,250.00 por concepto de cuotas de mantenimiento adeudados. Igualmente presentamos hoy una moción al tenor de la Regla 56 de Procedimiento Civil.*

*... ".*

Véase, Anejo 1 del Apéndice.

Así las cosas, en esa fecha, la recurrida interpuso escrito intitulado *"Solicitud Urgente de Remedio Provisional al Amparo de la Regla 56".* En el mismo, adujo que lo solicitado tenía las características de un interdicto preliminar. Señaló que el carácter urgente de la solicitud de remedio provisional presentado obedecía a que la peticionaria, en una clara actuación ultra vires y a pesar de haber instado un pleito para el cobro de unas cuotas alegadamente adeudadas, no ha aceptado a los adquirentes de la propiedad J-9 como miembros de la Asociación; les ha negado la entrega de los *"beepers"* que da acceso a su casa a través de los portones de seguridad de la urbanización; han amenazado con impedirle el acceso al camión de la mudanza que los adquirentes habían coordinado; y negado a proveerle a los adquirentes la dirección postal de su residencia ni el acceso al apartado postal.

Apuntaron que la peticionaria había manifestado que el portón de entrada de la Urbanización no pasaría nadie que ella no autorizare. Señaló que lo anterior *"constituye no sólo una actuación ilegal que perturba el derecho de posesión de los adquirentes, su derecho propietario, sino que les está causando un daño irreparable...".* Lo anterior se agudizaba más aún, ya que la recurrida había consignado las alegadas cuotas adeudadas. Su petitorio fue dirigido a que se dictara una Orden ex parte dirigida a la peticionaria, sus oficiales, directores, miembros, agentes y empleados a que se abstengan de perturbar la posesión o de cualquier forma intervenir con el disfrute pacífico de la unidad J-9 a los adequirentes (sic) de dicha propiedad, los esposos López-Valle. A su vez se le requirió al Tribunal de Primera Instancia ordenara la entrega de los *"beepers"* de acceso, entre otros remedios.

Ante lo anterior, a saber, la Orden de Hacer o Desistir bajo la Regla 56, el Tribunal de Primera Instancia celebró una vista. Determinó los siguientes hechos:

*"1. Monticielo S.E (recurrida) desarrolló un proyecto de urbanización para residencias.*

*2. El 9 de septiembre de 2002, se otorgó la Escritura 169 ante el Notario Mario Oronoz sobre condiciones restrictivas que dictaminaban sobre la organización, funcionamiento, mantenimiento y la creación de un Comité Arquitectónico para aprobar modificaciones, alteraciones, ampliaciones a las residencias.*

*3. La Cláusula 4 de la Escritura 169 dispone que se creará una corporación para velar por el mantenimiento y administración de la Urbanización Monticielo. Cada dueño de una residencia tendría derecho a 1 voto. En este caso se incorporó la Asociación de Residentes de Monticielo, Inc. (peticionaria).*

*4. Desde el mes de septiembre de 2002, la Demandante (recurrida) impuso una cuota para el mantenimiento de la Urb. Monticielo.*

5. La misma Cláusula 4 dispone que vendidas 81 unidades, se organizaría una Corporación para administrar y mantener Monticielo. Una vez se transfirieran dichos poderes a la Corporación, ésta tendría la obligación del mantenimiento de Monticielo.

6. Además, la misma cláusula dispone que la Demandante (recurrida) no tendría la obligación del mantenimiento, sistema de vigilancia, seguridad, de contratar y/o pagar guardias.

7. Conforme a la Escritura 169, las condiciones restrictivas durarían 20 años, renovables automáticamente cada diez (10) años, de no ser cambiadas por la Demandada (peticionaria).

8. La Cláusula 10 de la Escritura 169 dispone que la Demandante (recurrida) se reserva el derecho de modificar, enmendar dichas condiciones hasta que se venda la última casa. No se presentó evidencia de cambio alguno.

9. El 22 de febrero de 2008, la Demandante (recurrida) vendió la última propiedad J-9 a la Sra. Aida Luz Valle Mass y su esposo Oscar López, según escritura 11 ante el notario Mario Oronoz.

10. El 29 de febrero de 2008, la Sra. Nelly Morán Laguna, Secretaria de la Demandante (recurrida), habló por teléfono la Sra. Lydia Díaz, Tesorera de la Asociación (peticionaria) y solicitó le brindara información sobre la dirección postal para la Sra. Valle Mass, que la necesitaba para su trabajo.

11. La Sra. Morán Laguna le contestó que no se la iba a proveer, ni iba a dejar entrar el truck de mudanza, ni entregar beepers de los portones de seguridad hasta tanto la Demandante (recurrida) pagara la deuda de cuotas de mantenimiento que según alegaron asciende a $6,250.00 de principal y aproximadamente $21,000.00 de intereses y cargos por demora. Durante la vista, la Sra. Díaz se reiteró en que no entregaría los beepers.

12. Al presente, existe un procedimiento ante DACO donde se está ventilando las obligaciones de las Partes en cuanto al monto de las deudas de cada cual en cuanto al otro.

13. En el día de hoy se entrego (sic) el cheque de cuota de mantenimiento por el mes de marzo de 2008 de la propiedad vendida.

14. Con esta acción, el Demandante (recurrido) ejerce su obligación de saneamiento para con el comprador de la propiedad."

Véase, págs. 11-12 del Apéndice.

Entendió el tribunal a quo que, a tenor con la Ley Núm. 21 de 10 de agosto de 1988, según enmendada, y la Escritura 169, la recurrida no tenía deudas por concepto de cuotas de mantenimiento. Señaló que la ley dispone que el pago de la cuota será obligatorio para toda persona que advenga dueño y que nada se dispone en cuanto a la obligación de pagar cuotas al desarrollador. Entendió el foro de instancia que dicha interpretación es una cónsona con la Cláusula 4 de la Escritura que le concede a la recurrida el relevo de pagos por gastos de mantenimiento y seguridad. En su consecuencia, se concedió la Solicitud de Hacer o No Hacer y se le ordenó a la peticionaria entregara los beepers, diera acceso irrestricto a todas las áreas de uso comunal a los nuevos adquirentes, propietarios de la residencia J-9, toda vez que no existía gravamen de cuotas sobre la propiedad. Por último, señaló que el nuevo adquirente no era deudor solidario, toda vez que la deuda no existía. Concluyó que el caso ante el D.A.C.O. continuaría en cuanto a las controversias existentes en dicho proceso.

A la luz de lo antes señalado, la recurrida presentó una "Solicitud Urgente de Retiro de Fondos". Requirió al Tribunal de Primera Instancia le devolviera los fondos consignados.

Insatisfecha, la peticionaria acude ante nos. Junto con su escrito, acompañó una *"Moción en Auxilio de Jurisdicción"*. En auxilio de nuestra jurisdicción ordenamos la paralización del retiro de los fondos consignados y los trámites ante el Tribunal de Primera Instancia. Luego de varios trámites procesales **[3]** ante este Foro y contando con la posición del recurrido, procedemos a resolver.

## II

En su escrito, la peticionaria plantea que incidió el Tribunal de Primera Instancia al acoger una moción al amparo de la Regla 56 sin fijar la fianza requerida; al no desestimar la acción por falta de legitimación activa; y al emitir una Sentencia concediendo lo solicitado sin evidencia que lo justificara y en violación del debido proceso de ley.

## III

Conforme señaláramos en la nota al calce núm. 1, la Sentencia emitida no constituyó una adjudicación final conforme la Regla 43.5 de las Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 42.5. Se trata, pues, de una resolución interlocutoria. *First Fed. Savs. v. Nazario*, 138 D.P.R. 872 (1995).

La Regla 43.5 de las de Procedimiento Civil, *supra*, dispone, en lo pertinente:

*"En ausencia de la referida conclusión y orden expresa, cualquier orden o cualquier otra forma de decisión, no importa cómo se denomine, que adjudique menos del total de las reclamaciones o los derechos y obligaciones de menos del total de las partes, no terminará el pleito con respecto a ninguna de las reclamaciones o partes, y la orden u otra forma de decisión estará sujeta a reconsideración por el tribunal que la dicte en cualquier momento antes de registrarse sentencia adjudicando todas las reclamaciones y los derechos y obligaciones de las partes."*

La Regla 43.5, 32 L.P.R.A. Ap. III, establece dos principios sobre la vigencia de una resolución interlocutoria en un litigio múltiple. El primero se refiere a que el precepto *"[n]o es aplicable...cuando lo que resuelve el tribunal es sólo una controversia, aunque ésta sea separable de las restantes."* *Camaleglo v. Dorado Wings, Inc.,* 118 D.P.R. 20, 26 (1986); José. A. Cuevas Segarra, Tratado de Derecho Procesal Civil, Tomo II, pág. 703, **Publicaciones JTS** (2000). Por tanto, no sería *"final"* un dictamen interlocutorio del tribunal que sólo resuelve una controversia en el caso; y al no ser *"final"*, no puede ser ejecutable. *Díaz v. Navieras de P.R.,* 118 D.P.R. 297, 302 (1987), según citados en *Ramos y otros v. Colón y otros,* 153 D.P.R. 534, 545 (2001).

El segundo principio que surge del tercer párrafo de la Regla 43.5 se refiere al ejercicio continuo de la jurisdicción del tribunal a quo sobre las decisiones interlocutorias dictadas durante un pleito de múltiples reclamaciones. Éstas pueden reconsiderarse por el tribunal sentenciador en cualquier momento antes de la terminación del pleito, con la salvedad adicional de que, en nuestra jurisdicción, un juez de primera instancia no queda atado por las determinaciones interlocutorias de otro juez, sobre todo, cuando éstas no han sido objeto de revisión por el foro apelativo. Es decir, toda resolución interlocutoria estará sujeta a la reconsideración del tribunal a quo en cualquier momento antes de dictarse la sentencia que adjudique finalmente todos los planteamientos jurídicos del pleito. *Camaleglo v. Dorado Wings, Inc., supra*; Rafael Hernández Colón, *Derecho Procesal Civil*, sec. 4107, pág. 283 (1997).

Aún más, la parte afectada por estas resoluciones no tiene obligación de acudir ante nos mientras no se resuelva la totalidad de las reclamaciones del pleito. *Bco. Popular de P.R. v. Mun. de Aguadilla*, 144 D.P.R. 651, 658, n. 2 (1997); *First Federal Sav. Bank v. Nazario González, supra; Díaz v. Navieras de P.R.,* 118 D.P.R. 297, 302 (1987). Véase, además, *Fraya v. A.C.T.,* 162 D.P.R. 182 (2004).

En el presente caso observamos que de la Demanda se desprende una reclamación por la cantidad de $65,876.00, la cual, al momento de presentarse el recurso de autos, no había sido resuelta aún.

Por otro lado, La Regla 16.1 de las de Procedimiento Civil dispone:

*"Las personas que tuvieren un interés común sin cuya presencia no pueda adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandadas, según corresponda. Cuando una persona que deba unirse como demandante rehusare hacerlo, podrá unirse como demandada."*

32 L.P.R.A. Ap. III, R. 16.1.

Una parte indispensable se define como *"aquella persona cuyos derechos o intereses podrían quedar destruidos o inevitablemente afectados por una sentencia dictada estando esa persona ausente del litigio".* *Consejo de Titulares v. Jetter, Klare y otros,* res. el 1 de diciembre de 2006, 169 D.P.R. ___ (2006), **2006 J.T.S. 188**; Romero v. S.L.G. Reyes, res. el 28 de abril de 2005, 164 D.P.R. ___ (2005), **2005 J.T.S. 66**; *Fred y otros v. E.L.A.,* 150 D.P.R. 599, 608 (2000). Véanse también, *Cepeda Torres v. García Ortiz,* 132 D.P.R. 698, 704 (1993); *Fuentes v. Tribl. de Distrito,* 73 D.P.R. 959, 981 (1952).

Es decir, es parte indispensable aquélla que tiene tal interés en la controversia que no puede dictarse una sentencia sin que sus derechos se vean afectados. *Pérez Rosa v. Morales Rosado, et al,* res. en 28 de septiembre de 2007, 172 D.P.R. ___ (2007), **2007 J.T.S. 176**. Por ello, una sentencia dictada sin incluir a una parte indispensable en el pleito, no sería válida. *Fred y otros v. E.L.A., supra; Unisys v. Ramallo Brothers,* 128 D.P.R. 842, 859 (1991).

No es cualquier interés sobre un pleito, sino que se trata de un interés de tal orden que impida la confección de un derecho adecuado sin afectarle o destruirle radicalmente sus derechos. *Pérez Rosa v. Morales Rosado, et al, supra; Pueblo v. Henneman,* 61 D.P.R. 189, 194 (1942). Ese interés tiene que ser real e inmediato. No se trata de meras especulaciones o de un interés futuro. *Pérez Rosa v. Morales Rosado, et al, supra; Torres v. Alcalde,* 135 D.P.R. 110 (1994).

La citada Regla 16.1 de las de Procedimiento Civil se inspira en dos (2) importantes axiomas. Estos son: la protección constitucional que impide que una persona sea privada de la libertad y propiedad sin el debido proceso de ley, Art. II, Sec. 7, Constitución de Puerto Rico, 1 L.P.R.A. Art. II § 7, y la necesidad de incluir a una parte indispensable, de modo que el decreto judicial emitido sea uno completo y justo. *Fred y otros v. E.L.A., supra; Cepeda Torres v. García Ortiz,* supra.

Este precepto procesal forma parte del esquema de rango constitucional que prohíbe que una persona sea privada de su libertad o propiedad sin el debido proceso de ley, y su función es proteger a las personas ausentes de los posibles efectos perjudiciales de la resolución del caso y evitar la multiplicidad de pleitos. *Mun. de San Juan v. Bosque Real S.E.,* 158 D.P.R. 743 (2003).

La determinación de si debe acumularse una parte depende de los hechos específicos de cada caso particular. *Pérez Rosa v. Morales Rosado, et al, supra; Granados v. Rodríguez Estrada II,* 124 D.P.R. 593 (1989); *Unisys v. Ramallo Brothers,* 128 D.P.R. 842 (1991). Los tribunales tienen que hacer un análisis juicioso que envuelva la determinación de los derechos de un ausente y las consecuencias de no ser unido como parte en el procedimiento. *Sánchez v. Sánchez,* 154 D.P.R. 645 (2001). Es importante auscultar si el tribunal podrá hacer justicia y conceder un remedio final y completo sin afectar los intereses del ausente. J. A. Cuevas Segarra, Tratado de Derecho Procesal Civil, supra a la pág. 368. Una vez se concluya que una persona es parte indispensable, el pleito no podrá adjudicarse sin su presencia. *Pérez Rosa v. Morales Rosado, et al, supra.* Por consiguiente, dicha persona se tiene que hacer formar parte del procedimiento acumulándose como parte demandante o demandada, según corresponda. *Id.* De este modo, la regla referida busca evitar que la persona ausente se vea privada de su propiedad sin un debido proceso de ley y que el remedio adjudicado sea completo. *Ibid; Romero v. S.L.G. Reyes,* res. en 28 de abril de 2005, 164 D.P.R. ___ (2005), **2005 J.T.S. 66**.

De tal arraigo es el interés de proteger a las partes indispensables, que la no inclusión en el pleito de una parte indispensable constituye una defensa irrenunciable, la cual puede presentarse en cualquier momento durante el proceso. *Pérez Rosa v. Morales Rosado, et al, supra; Sánchez v. Sánchez, supra*. Incluso, los tribunales apelativos deben levantar motu proprio la falta de parte indispensable, debido a que ésta incide sobre la jurisdicción del tribunal.

Por su parte, la Regla 15.1 de las de Procedimiento Civil, *supra*, dispone:

*"Todo pleito se tramitará a nombre de la persona que por ley tenga el derecho que se reclama, pero una persona autorizada por ley podrá demandar sin el concurso de aquélla para cuyo beneficio se hace de reclamación; y cuando por ley así se disponga, podrá presentarse una reclamación a nombre del Estado Libre Asociado de Puerto Rico para beneficio de otra persona. **No se desestimará un pleito por razón de no tramitarse a nombre de la persona que por ley tiene el derecho que se reclama hasta que, luego de levantarse la objeción, se haya concedido un tiempo razonable para que la persona con derecho ratifique la radicación del pleito, o se una al mismo, o se sustituya en lugar del promovente, y tal ratificación, unión, o sustitución tendrá el mismo efecto que si el pleito se hubiere incoado por la persona con derecho.***"* (Énfasis suplido)

De acuerdo a la disposición anterior, *"es deber del tribunal permitir y promover la incorporación al pleito de las partes realmente interesadas con el propósito de verificar la existencia de una controversia real que exige un remedio por parte de los tribunales"*. *Ríos Rosario v. Vidal Ramos, supra*, a las págs. 11-12 (1993).

## IV

Dentro del marco jurídico antes enunciado, procedamos a resolver la presente controversia.

En el presente caso, se desprende de la Demanda enmendada que los adquirentes de la propiedad J-9, a saber, los esposos López Valle firmaron la Escritura de Compraventa de la propiedad el 22 de febrero de 2008, adviniendo titulares de la misma. Ante lo anterior, la peticionaria se negó a entregar los *"beepers"*, entre otras alegaciones. La recurrida *"cumpliendo con el deber de diligencia que exige a todo vendedor garantizar el acceso y disfrute pacífico del adquirente, Monticielo (recurrida) acude a este Honorable Tribunal mediante la presente Demanda"*.

Una demanda generalmente debe ser tramitada a nombre de la persona que por ley tenga el derecho que se reclama, que es quien goza de legitimación activa para instar la reclamación. Véase, *Acevedo Vilá y Otros v. Meléndez*, 164 D.P.R. ___ (2005), **2005 J.T.S. 80**, a la pág. 80; *Crespo v. Cintrón*, 159 D.P.R. 290 (2003), En este caso, los esposos López Valle son parte indispensable del pleito.

Sobre el planteamiento de que la recurrida no posee legitimación activa, basta señalar que, una vez se traiga al pleito a los esposos López Valle, la recurrida, por ser alegada deudora solidaria con éstos, conforme se desprende de la Demanda, cuenta con legitimación activa.

## V

Por los fundamentos antes señalados, se expide el auto solicitado y se revoca la *"Sentencia"* en controversia.

Se devuelve el caso al T.P.I. para la continuación de los procedimientos. Una vez quede incorporada al pleito la parte indispensable a la que hemos hecho referencia, se deberá emplazar a la parte demandada conforme a la Regla 4 de las de Procedimiento Civil. Contestada la demanda y trabada la controversia, las partes, de ser necesario, solicitaran los remedios provisionales que tengan a bien. La parte insatisfecha con el remedio concedido, de ser ello proveniente, podrá acudir ante nos mediante el recurso apelativo apropiado. De no solicitarse ningún remedio provisional, continuaría el trámite ordinario diseñado por el ordenamiento para este tipo de casos.

Lo acordó y ordena el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. María E. Pérez Ortiz
Secretaria del Tribunal de Apelaciones

### ESCOLIOS 2008 DTA 69

**1.** El recurso presentado resulta inexacto. Tratándose de una sentencia parcial que no constituye una adjudicación final conforme la Regla 43.5 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 42.5, son en realidad resoluciones interlocutorias. *First Fed. Savs. v. Nazario*, 138 D.P.R. 872 (1995). La revisión ante nos debe ser mediante el vehículo procesal de certiorari; así fue acogido por este Tribunal.

**2.** Residencia Núm. J-9 de la Urbanización.

**3.** La recurrida presentó escrito intitulado *"Moción Urgente Solicitando Reconsideración Parcial de la Orden de Paralización y Otros Extremos"*.