Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| **ORIENTAL BANK** Demandante-Apelante v. **ALVIN YAMIR DIAZ PAGÁN** Demandado-Apelado | KLAN202300556 | **APELACIÓN** Procedente del Tribunal de Primera Instancia, Sala Superior de Carolina Civil Núm.: **CA2019CV02650** Sobre: Ejecución de Hipoteca (IN REM) |

Panel integrado por su presidente el Juez Sánchez Ramos, el Juez Rivera Torres y el Juez Pérez Ocasio.

Pérez Ocasio, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 17 de septiembre de 2024.

Comparece ante nos, Oriental Bank, en adelante, Oriental o la parte apelante, solicitando que revisemos una *"Sentencia"* del Tribunal de Primera Instancia, Sala de Carolina, en adelante, TPI-Carolina, notificada el 8 de febrero de 2023, emitida el 18 de enero de 2023. En la misma, el Foro Recurrido *desestimó* la demanda en Ejecución de Hipoteca (*IN REM*) incoada por Oriental Bank contra Alvin Díaz Pagán, en adelante, Díaz Pagán o apelado.

Por los fundamentos que expondremos a continuación, *confirmamos la determinación apelada.*

**I.**

El 18 de julio de 2019, la parte apelante presentó una demanda en ejecución de hipoteca contra Díaz Pagán. El pagaré que motiva el presente pleito fue suscrito el 16 de octubre de 2007,

---

[1] Véase Orden Administrativa OATA-2023-131 del 14 de julio de 2023, se designa al Juez Alberto Luis Pérez Ocasio en sustitución del juez Carlos G. Salgado Schwarz.

primero, a favor de RBS Mortgage Corporation y, eventualmente, modificado a favor del Banco Cooperativo de Puerto Rico o a su orden del 17 de junio de 2011 por la suma de $137,688.46 a un interés anual de 6.75%. El 1 de julio de 2016, el apelado comenzó su moratoria adeudando $123,790.59 en concepto del principal, $25,067.52 en intereses computados hasta la fecha de radicación de la demanda, $1,786.79 en cargos por demora, $176.00 en gastos legales de quiebra, sumados a otros $660.00 en gastos adicionales de quiebra y $3,024.85 en gastos adicionales. A estos se suman $3,670.22 por concepto de 'escrow' y la suma de $13,768.00 en costas, gastos y honorarios según pactado en pagaré.[2]

El 2 de diciembre de 2019, luego de la concesión de varias prórrogas, el señor Díaz Pagán presentó escrito de *"Contestación a la Demanda"*. En esencia expuso que el demandante, aquí apelante, no demostró ser poseedor del pagaré que garantiza la hipoteca; que dicha hipoteca no quedó constituida por falta de inscripción oportuna y *que la deuda que pesaba contra el deudor quedó descargada en la Corte de Quiebras antes de la inscripción de la hipoteca.* Por esa razón, entendió que el préstamo hipotecario suscrito, si alguno, era nulo o anulable y, en consecuencia, procedía la desestimación de la demanda.[3]

El 11 de diciembre de 2019 el Tribunal emitió orden de referido al Proceso de Mediación de Conflictos *so pena* de adquirir jurisdicción. El 20 de diciembre de ese mismo año, Scotiabank se fusionó con Oriental Bank. Por esta razón, el 15 de enero de 2020 el acreedor solicita *"Moción de Sustitución de Parte"*. El 22 de enero de 2020, el Centro de Mediación emite *"Moción Informativa"* exponiendo que no puede llevarse a cabo la mediación hasta que se autorice la sustitución de parte. Resuelto el asunto, finalmente, se cita a ambas

---

[2] Apéndice del Recurso de Apelaciones, págs. 59-140.
[3] Id., págs. 141-144.

partes a mediación mediante videoconferencia para el 12 de mayo de 2020.[4]

El 12 de mayo de 2020, debido a la pandemia del COVID-19 y el cierre de algunos centros judiciales, la mediación no pudo llevarse a cabo hasta el 8 de julio de 2021. En dicha mediación, Alvin Díaz Pagán desistió de participar en la mediación compulsoria.[5]

Así las cosas, el 11 de agosto de 2021, Oriental Bank presentó escrito titulado *"Moción en Cumplimiento de Orden y en Solicitud de Sentencia Sumaria"* toda vez que el demandado contestó la demanda y desistió de participar del proceso de mediación.[6] Argumentó que procedía la Sentencia por la vía sumaria concediendo el remedio solicitado por el acreedor. Esto, debido a que no existía controversia sustancial de hechos, toda vez que eran poseedores del pagaré, Díaz Pagán fungía como deudor en pagaré y su modificación, y estas promesas de pago se encontraban inscritas en el Registro.[7]

Luego de varias solicitudes de prórrogas, el 5 de noviembre de 2021 el demandado presentó escrito en *"Oposición a Sentencia Sumaria y Solicitud de Desestimación de la Demanda"* en la que expuso, nuevamente, *que la hipoteca no se constituyó por falta de inscripción válida.*[8] Por esa razón, la única causa que pudiera haber sería en su carácter personal y, habiéndose sometido a la quiebra, por virtud del descargo otorgado, no se puede ir contra su persona en cobro de dinero. Así las cosas, añadió, que la presente demanda era una violación a la Ley de Quiebras y argumentó, entonces, que solo procedía la desestimación de la demanda y la imposición de

---

[4] SUMAC, entrada 17.
[5] Apéndice del Recurso de Apelaciones, págs. 148-150.
[6] Hacemos constar que en el expediente no obran los documentos que Oriental Bank presentó junto con esta moción al Foro Apelado.
[7] Id., págs. 152-163.
[8] Es importante señalar que esta moción no cumplió con los requisitos de la Regla 36.3 (b) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.4.

costas y honorarios. Todo esto sin perjuicio de los remedios que dispone la Ley de Quiebras por este tipo de violación.[9]

Luego de varios trámites procesales, que no son necesarios consignar, el 8 de febrero de 2023 fue notificada a las partes la Sentencia del presente caso, ordenando la desestimación, amparado el Tribunal en la Regla 42.2 de Procedimiento Civil, supra, sin determinaciones de hechos ni de derecho.[10] De este modo, motivó a la parte demandante a presentar escrito en *"Moción de Reconsideración y Solicitud de Determinación de Hechos"*. En esta moción, arguyó que era acreedor asegurado, constando así en la determinación del Tribunal de Quiebras, que era tenedor del pagaré hipotecario y que la deuda era líquida y exigible. Entendiendo que, de esta manera, tiene derecho a reclamar la ejecución de hipoteca IN REM de la propiedad.[11] Sin embargo, la *"Moción de Reconsideración"* fue declarada *No Ha Lugar* el día 25 de mayo de 2023.

Inconforme, la parte demandante presentó Recurso de Apelación ante nos, en el que expuso los siguientes señalamientos de error:

> **PRIMERO**: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR LA DEMANDA IN REM DEL ACREEDOR HIPOTECARIO, A PESAR DE QUE SE TRATA DE UN RECLAMO ASEGURADO, DE UNA PROPIEDAD QUE FUE ABANDONADA POR EL SÍNDICO DE LA CORTE DE QUIEBRAS Y QUE, POR TANTO, FUE EXCLUIDA DEL CAUDAL DE QUIEBRA
>
> **SEGUNDO:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NEGARSE A RECONOCER EL RECLAMO IN REM DEL ACREEDOR HIPOTECARIO CUANDO NUESTRO ORDENAMIENTO PERMITE ESTE TIPO DE RECLAMO
>
> **TERCERO:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NEGARSE A EMITIR SENTENCIA SUMARIA A FAVOR DEL DEMANDANTE

---

[9] Apéndice del Recurso de Apelaciones, págs. 234-248.
[10] Id., págs.148-150.
[11] Id., págs. 4-52.

La parte apelada compareció el 26 de julio de 2023 con un escrito titulado *Alegato del Apelado*. Con el beneficio de la comparecencia de ambas partes procedemos a resolver.

## II.

### A. Sentencia Sumaria

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, es un vehículo para asegurar la solución justa, rápida y económica de un caso. *Cruz, López v. Casa Bella Corp. y otros*, 2024 TSPR 47, 213 DPR ___ (2024) *Birriel Colón v. Econo y otros*, 2023 TSPR 120, 213 DPR ___ (2023); *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981, 992 (2023); *Oriental Bank v. Caballero García*, 212 DPR 671, 678 (2023); *González Meléndez v. Mun. San Juan et al.*, 212 DPR 601, 610 (2023); *Acevedo y otros v. Depto. Hacienda y otros*, 212 DPR 335, 350 (2023); *Universal Ins. y otros v. ELA y otros*, 211 DPR 455, 471 (2023); *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964, 979 (2022). Dicho mecanismo permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales no exista controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita. *Oriental Bank v. Caballero García*, supra, pág. 212; *Segarra Rivera v. Int'l. Shipping et al.*, supra, pág. 980. Este mecanismo lo puede utilizar la parte reclamante o aquella parte que se defiende de una reclamación. 32 LPRA Ap. V, R. 36.1 y 36.2.

Mediante el mecanismo de sentencia sumaria, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos ameritan dilucidarse en un juicio. *León Torres v. Rivera Lebrón*, 204 DPR 20, 42 (2020). Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues se agiliza el proceso judicial, mientras simultáneamente se provee a los

litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico. *Segarra Rivera v. Int'l. Shipping et al.*, supra; *Ramos Pérez v. Univisión*, 178 DPR 200, 214 (2010). Como se sabe, en aras de prevalecer en una reclamación, la parte promovente debe presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción. Id.

Nuestro ordenamiento civil y su jurisprudencia interpretativa impone unos requisitos de forma con los cuales hay que cumplir al momento de presentar una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3; *Oriental Bank v. Caballero García*, supra, pág. 679; *Pérez Vargas v. Office Depot*, 203 DPR 687, 698 (2019). Si la parte promovente de la moción incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido". *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 111 (2015).

Por otro lado, *"la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación"*. *León Torres v. Rivera Lebrón*, supra, pág. 43. Por el contrario, quien se opone a que se declare con lugar esta solicitud viene obligado a enfrentar la moción de su adversario

de forma tan detallada y específica como lo ha hecho la parte promovente puesto que, si incumple, corre el riesgo de que se dicte sentencia sumaria en su contra, si la misma procede en derecho. *Íd.*

Por ello, en la oposición a una solicitud de sentencia sumaria, la parte promovida debe puntualizar aquellos hechos propuestos que pretende controvertir. *León Torres v. Rivera Lebrón,* supra, pág. 44. Claro está, para cada uno de estos supuestos deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la antes citada Regla 36.3 de Procedimiento Civil, supra. *Íd.* En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. *Íd.* De lo anterior, se puede colegir que, *ante el incumplimiento de las partes con las formalidades de la Regla 36 de Procedimiento Civil de 2009, supra, la consideración de sus posiciones descansa en la sana discreción del Tribunal.*

Sin embargo, el que el promovido no contravenga conforme a las disposiciones de las Reglas de Procedimiento Civil, supra, la prueba presentada en la solicitud de sentencia sumaria no resulta en la automática concesión de la sentencia. *SLG Fernández-Bernal v. RAD-MAN et al.,* 208 DPR 310, 337 (2021); *Piovanetti v. S.L.G. Touma, S.L.G. Tirado,* 178 DPR 745, 774 (2010). Esto es así porque la sentencia sumaria puede dictarse a favor o en contra del promovente, según proceda en derecho. *Rosado Reyes v. Global Healthcare,* supra; *Audiovisual Lang. v. Sist. Est. Natal Hnos.,* 144 DPR 563 (1997).

Ahora bien, el Tribunal Supremo de Puerto Rico ha discutido los criterios que este Tribunal de Apelaciones debe considerar al momento de revisar una sentencia dictada sumariamente por el foro de instancia. *Roldán Flores v. M. Cuebas et al.,* 199 DPR 664, 679-

680 (2018); *Meléndez González et al. v. M. Cuebas*, supra, págs. 118-119. Sobre ese particular, nuestro más Alto Foro señaló que:

[E]l Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.

*Roldán Flores v. M. Cuebas et al.,* supra, pág. 679.

Conforme a lo anterior, *"nos encontramos en la misma posición que el Tribunal de Primera Instancia para evaluar la procedencia de una sentencia sumaria"*. *Cruz, López v. Casa Bella Corp. y otros,* supra; *Oriental Bank v. Caballero García,* supra, pág. 680; *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, pág. 337; *González Santiago v. Baxter Healthcare,* 202 DPR 281, 291 (2019). Por ello, nuestra revisión es una *de novo,* y nuestro análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, supra, y su jurisprudencia interpretativa. *Íd.* De esta manera, si entendemos que los hechos materiales realmente están incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente el derecho. *Íd.*

Por otro lado, en *Torres Capeles v. Rivera Alejandro,* 143 DPR 300, 309 (1997), nuestro Alto Foro interpretó la Regla 10.2 de Procedimiento Civil, supra. Con relación a las solicitudes de desestimación, justipreció que estas podrían convertirse en adjudicaciones de naturaleza sumaria. Añadió que este escenario puede facilitarse cuando alguna de las partes "someten materia que no formó parte de las alegaciones, tales como: deposiciones,

admisiones, certificaciones y contestaciones a interrogatorios. El tribunal tiene plena discreción para aceptar o no la materia evidenciaria que se acompaña. Esta discreción normalmente la ejerce tomando en consideración si la materia ofrecida y la conversión subsiguiente facilitarían o no la disposición del asunto ante su consideración. Si de la materia ofrecida surge que el caso no se debería despachar sumariamente y que para su resolución se debería celebrar una vista en su fondo, el tribunal denegaría tanto la conversión de la moción de desestimación en una de sentencia sumaria, como la concesión de la desestimación." Id.

Finalmente, es importante señalar que la Regla 42.2 (a) de Procedimiento Civil, supra, permite que el Foro Primario omita especificar los hechos probados y sus conclusiones de derecho, en ciertas circunstancias, al emitir sentencias o resoluciones. Entre estas, cuando resuelva mociones al amparo de la Regla 36 del precitado cuerpo normativo.

### B. Propiedad Abandonada

Cuando se presenta una petición de quiebra se crea inmediatamente un caudal de quiebra, el cual consiste en toda propiedad que estará sujeta a la jurisdicción del Tribunal de Quiebras. *CHMI Hospital v. Depto. Salud,* 171 DPR 313, 322 (2007). La presentación de dicha petición también conlleva la paralización automática contra el deudor. La paralización automática produce el efecto de cesar todas las gestiones de cobro, retención, embargo o ejecución de hipoteca contra una persona que ha solicitado acogerse a la protección de la Ley de Quiebras. *Íd.,* pág. 322; 11 USCA. sec. 362(a)(3).

No obstante, el Código de Quiebras, 11 USCA. sec. 365 le da la facultad al síndico de rechazar ciertos contratos, si estima que no son de provecho para el caudal. Por su parte, en 11 USCA. sec.

1107(a) se le otorga esta misma facultad al deudor. La decisión de rechazar un contrato se encuentra en la sana discreción del deudor. 3 *Norton Bankruptcy Law and Practice 2d* Sec. 39:32, págs. 39–68 (1994). Si un contrato es rechazado, el caudal pierde todo interés o beneficio derivado de éste; es decir, ese contrato es excluido y no forma parte del caudal. Cónsono con lo anterior, *el abandono* de una propiedad ocurre después de que se celebre una vista, en la cual las partes tienen oportunidad de expresarse en cuanto a dicho abandono. Abandonar una propiedad tiene el efecto de excluirla del caudal en quiebra. *CHMI Hospital v. Depto. Salud,* supra, págs. 323-324.

### C. Ley Hipotecaria 1979

En cuanto al derecho registral en Puerto Rico, es importante destacar que la inscripción de derechos reales en el Registro de la Propiedad, como regla general, tiene *una función declarativa.* Es decir, la mayoría de los derechos reales nacen y se extinguen fuera del Registro de la Propiedad. No obstante, por otro lado, existen excepciones a esa regla en los que *la inscripción es constitutiva.* Como parte de la función constitutiva, ciertos derechos reales nacen y son oponibles a tercero desde el momento en que son inscritos en el Registro de la Propiedad. L. Rivera Rivera, *Derecho Registral Inmobiliario Puertorriqueño*, 3ra ed., San Juan, Jurídica Editores, 2012, págs. 39-47. Esto es así sin importar el momento en el que las partes se hayan obligado u otorgado la escritura pública mediante la cual se materializa la concesión del derecho real del que se trate. Pues, si bien la escritura es un requisito formal, **la inscripción es el acto que asegura la existencia de este derecho**. L. Rivera Rivera, *Derecho Registral,* supra, pág. 45.

Entre los casos en los que la inscripción tiene una función constitutiva, se encuentra *el derecho real de garantía de hipoteca.*

Art. 1774 del Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 5042;[12] Art. 188 de la Ley Núm. 198 del 8 de agosto de 1979, según enmendada, conocida como la "Ley Hipotecaria y del Registro de la Propiedad" 30 LPRA sec. 2605 (en adelante Ley Hipotecaria 1979). *La hipoteca* son gravámenes o cargas reales que sujetan, directa o indirectamente, los bienes inmuebles y derechos ofrecidos en garantía para asegurar el cumplimiento de las obligaciones que convienen las partes. Art. 155 de la Ley Hipotecaria 1979, supra, 30 LPRA sec. 2551. Será requisito para que queden válidamente constituidas las hipotecas que (1) se hagan mediante escritura pública y; (2) se inscriban en el Registro de la Propiedad. Art 188, Ley Hipotecaria 1979, supra. Por consiguiente, si el derecho real de hipoteca no se constituye, a través de su inscripción en el Registro de la Propiedad, no existe la hipoteca. *First Bank v. Registradora*, 208 DPR 64, 93 (2021). Dicho de otro modo, una escritura de constitución de hipoteca no inscrita en el Registro de la Propiedad *solo tiene el carácter de un crédito personal, como cualquier pagaré o promesa de pago*. Adicional a esto, desde el año 1934 en *Capó v Sucn. Rivera Zayas*,[13] el Tribunal Supremo ha reiterado que un gravamen como el de la hipoteca (1) *no puede inscribirse si la finca no se encuentra inmatriculada*; (2) el deudor tiene la obligación de colocar al acreedor en condiciones de inscribir el gravamen; (3) de no hacerlo, deja de otorgar al acreedor la garantía a que se obliga y; (4) de no inscribirse el instrumento, no podrá tener otro carácter que el de un crédito personal escriturario.

Mientras, el Art. 53 de la Ley Hipotecaria 1979, 30 LPRA sec. 2256, establece que *para determinar la fecha de inscripción de un derecho se considerará la fecha de presentación*. De manera que

---

[12] Código Civil 1930 derogado, vigente al momento de los hechos en controversia.
[13] *Capó v Sucn. Rivera Zayas*, 47 DPR 642 (1934).

cada título o gravamen inscrito se retrotrae a su fecha de presentación, determinando así el rango registral de esta. El rango registral es el puesto que un derecho real ocupa, en relación con otros, respecto a un mismo bien inmueble en el Registro de la Propiedad. Dicho rango o preferencia es concedido de acuerdo al principio de primero en tiempo primero en derecho, surtiendo efectos contra terceros desde entonces y determinando la superioridad o rango entre inscripciones sucesivas. L. Rivera Rivera, *op cit.,* a la pág. 269; Art. 53 de la Ley Hipotecaria 1979, *supra.*

Sobre la modificación de las obligaciones, es sabido que nuestro ordenamiento jurídico las permite, principalmente, partiendo de la Sec. 2-117 del Capítulo 43: Instrumentos Negociables, 19 LPRA sec. 517. Este estatuto establece que, el pagaré hipotecario, como instrumento negociable de promesa de pago, podrá modificarse por un acuerdo separado entre el deudor y la persona con derecho a exigir el cumplimiento del instrumento. En este sentido, esa modificación es subsidiaria a la obligación principal. Así las cosas, podemos deducir que si el derecho real de la hipoteca es constitutivo —es decir, adviene a la vida jurídica una vez inscrito en el Registro de la Propiedad— es lógico que los requisitos para modificarla sean cónsonos con los requisitos para darle vida inicialmente. Es decir, que conste en escritura pública ante notario y sea presentado e inscrito en el Registro de la Propiedad. *First Bank v. Registradora,* supra, en las págs. 93-94.

Para la inscripción y validez de una modificación, en este caso, el del pagaré hipotecario, nos dice la ley que deberá constar previamente registrado el derecho de la persona que otorgue o en cuyo nombre sean otorgados los actos o contratos referidos, de lo contrario será denegado el registro. Artículo 57, Ley Hipotecaria, supra, 30 LPRA sec. 2260. Esto es así, como cuestión de tracto registral sobre la que descansa la fe pública registral.

### D. Acciones *IN REM*

La acción de ejecución de hipoteca por la vía ordinaria incluye la acción personal y la real, por ello se conoce como una de naturaleza mixta. *Abrams Rivera v. ELA*, 178 DPR 914, 928 (2010); *First Federal Savs v. Nazario, et als.*, 138 D.P.R. 872, 879 (1995). En ese sentido, hay que saber distinguir entre el crédito por una parte (pagaré o promesa de pago) y la garantía que asegura el cumplimiento (hipoteca) por otro lado en posición de accesoriedad respecto al crédito. R.M. Roca Sastre, *Derecho Hipotecario*, Barcelona, 7ma edición, Ed. Bosch, 1979, T. IV, Parte 2, 1033. La satisfacción de la sentencia se puede obtener mediante el requerimiento personal al deudor o por la ejecución de la garantía hipotecaria. Es decir que, vista desde una perspectiva mixta, permite al acreedor dirigirse contra el bien —independientemente del tercero que lo posea y contra el patrimonio del deudor. A.C. Gómez Pérez, L.I. Quintana Lloréns, *La Hipoteca en el Derecho Inmobiliario Registral Puertorriqueño*, Ed. Temis S.A., Bogotá (2021), pág. 43.

En su vertiente real, el acreedor hipotecario podrá dirigirla contra el bien inmueble dado en garantía. Esta acción opera de naturaleza *in rem* y es independiente de quién sea el titular, ya pueda ser el propio hipotecante o un tercer poseedor. Por lo que el titular del crédito, ante el incumplimiento de la obligación que asegura, puede solicitar la ejecución del bien o derecho que lo garantiza, aun si existiesen terceros que puedan verse perjudicados. Íd., págs. 43-44. Esa naturaleza *in rem* es precisamente la que nace de la constitución de la garantía hipotecaria.

### III.

El caso ante nos, se trata sobre la revisión de una determinación sucinta por la vía sumaria, que no incluye

determinaciones de hechos ni de derecho al amparo de la Regla 42.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 42.2. Por tal razón, como foro apelativo, nos encontramos en igual posición que el TPI-Carolina para evaluar las condiciones de esta. En ese sentido, nos corresponde pasar juicio *de novo*.

Procedemos a la realización de un listado de hechos realmente importantes que sirven de base para la revisión *de novo*:

(1) En el año 2007 el apelado se convirtió en dueño en pleno dominio del inmueble que nos atañe por compraventa al precio en alzada de 139,900.00.[14]

(2) Ese mismo año, el 16 de octubre de 2007, para la realización de la compraventa el apelado emitió deuda, constituyendo una hipoteca en garantía de pagaré como promesa de pago a la orden de RBS Mortgage Corporation.[15]

(3) La Hipoteca fue presentada para inscripción ante el Registro de la Propiedad el *7 de noviembre de 2007*, con *Asiento 787 al Diario 237 de Carolina III*.[16]

(4) Al momento de presentar la Hipoteca, la Finca **no había sido inmatriculada**.[17]

(5) El asiento de presentación de la Hipoteca se mantuvo sin calificar. Es decir, no se denegó ni se inscribió por un periodo de tiempo.[18]

(6) El *19 de mayo de 2011* se presentó solicitud para inmatricular la finca en cuestión, con el correspondiente *Asiento 1113 del Diario 250 de Carolina III*.[19]

---

[14] Apéndice del Recurso de Apelaciones, págs. 29-33.
[15] Id.
[16] Id., págs. 29-35.
[17] Id.
[18] Id.
[19] Id.

(7) El 17 de junio de 2011, las partes acuerdan la modificación de la hipoteca pactada el 16 de octubre de 2007 en el que se ofreció en garantía el inmueble. Mediante escritura pública se pactó modificar la cantidad del principal, la fecha de comienzo de los pagos y devengar intereses, así como la fecha de vencimiento.[20]

(8) La modificación de hipoteca fue presentada el **29 de agosto de 2011** al Registro de la Propiedad Carolina III. Siendo asignado el **Asiento 1130 del Diario 251**.[21]

(9) El deudor hipotecario presentó el 16 de agosto de 2016 una petición de Quiebra ante el Tribunal Federal.[22]

(10) Como parte del proceso de quiebras, tras un *abandono de la propiedad* por el síndico, el inmueble quedó fuera del caudal de quiebras.[23]

(11) Eventualmente, el Registrador calificó todos los asientos presentados en el Registro.[24]

(12) Inscribió, en primer rango, como primera inscripción la inmatriculación de la finca presentada después de la hipoteca.[25]

(13) Luego, como segunda inscripción -a pesar de que la ley establece que la inscripción se retrotrae a la presentación- inscribió la Hipoteca y, como nota marginal de esta, su debida modificación.[26]

(14) Ante el incumplimiento de lo pactado en el instrumento negociable, Scotiabank, como acreedor del pagaré, inició la

---

[20] Apéndice del Recurso de Apelaciones, págs. 29-31.
[21] Id., págs. 29-35.
[22] Id., págs. 37-47.
[23] Id.
[24] Id., págs. 48-53.
[25] Id.
[26] Id.

acción legal de naturaleza *In Rem* contra la propiedad de la que es titular el apelado.[27]

(15)Luego de la eventual fusión de Scotiabank con Oriental Bank, este último es propiamente el poseedor del pagaré.

Además, puntualizamos que la documentación adjuntada no nos permitió realizar, sobre las determinaciones de hecho de Oriental Bank en su solicitud de sentencia sumaria, una revisión *de novo*. Sin embargo, justipreciamos que el Foro Apelado, amparado en lo resuelto por nuestro Tribunal Supremo en *Torres Capeles v. Rivera Alejandro,* supra, convirtió la solicitud de desestimación presentada por el apelado en respuesta a la precitada moción, en una solicitud de sentencia sumaria.

El Foro Primario ejerció la discreción concedida por la Regla 42.2 (a), y dictó sentencia sin hacer determinaciones de hecho ni de derecho. En consecuencia, declaró "Ha Lugar" la solicitud de desestimación del apelado.

Por todo lo cual, atenderemos los asuntos planteados en los errores del recurso de epígrafe, conforme a lo que obra en el expediente, sin encontrarnos en posición de evaluar las determinaciones de hechos incontrovertidos de la solicitud de sentencia sumaria de la apelante, por no encontrarse la documentación necesaria para su revisión *de novo*. Atenderemos, además, las controversias planteadas sin pasar juicio sobre hechos controvertidos, por no haberse expuesto ninguno en la moción en oposición a la sentencia sumaria y sobre desestimación.

**A.**

Por encontrarse relacionados entre sí, este tribunal determinó atender el *primer y segundo señalamiento de error* en conjunto. En estos se señala, por la parte apelante, que erró el Tribunal al negarse

---

[27] Apéndice del Recurso de Apelaciones, págs. 59-140.

a reconocer el reclamo *IN REM* y desestimar la demanda tras considerar que se trató de un reclamo asegurado sobre una propiedad excluida del caudal de quiebra. *No le asiste la razón*, veamos.

En nuestro ordenamiento jurídico es hartamente conocido que se permiten las acciones de naturaleza *IN REM*, principalmente, en casos de propiedades abandonadas por el síndico de quiebras ante garantías hipotecarias por acreedores asegurados. El efecto de abandonar una propiedad es que quede fuera del caudal de quiebras, sin jurisdicción del Tribunal de Quiebras y descubiertos de la paralización automática que brinda dicho tribunal. En estos casos, debido a la paralización automática, está prohibido ir en cobro de dinero contra el deudor en quiebra, pero se permite que se pueda proceder en *IN REM*, contra la propiedad -siempre que se tenga causa de acción- y no contra el deudor, sobre los bienes fuera del caudal de quiebras.

Ahora bien, la acción de naturaleza real que da paso a proceder en *In Rem* nace de la constitución de una garantía hipotecaria. Esto debido a que en los casos de ejecuciones de hipotecas nos encontramos ante una acción de naturaleza mixta, una acción personal (la obligación del deudor) y la acción real (hipoteca del inmueble en garantía de la deuda). Encontrándose el deudor bajo la jurisdicción del Tribunal de Quiebras, el acreedor pierde cualquier acción personal contra éste, quedando la acción real sobre el inmueble abandonado siempre que se haya constituido oportunamente la garantía hipotecaria.

Así las cosas, el derecho registral puertorriqueño es claro en que para constituir una hipoteca es necesario, en primer lugar, dos requisitos constitutivos: (1) que se otorgue mediante escritura pública y (2) que se inscriba en el registro. Sobre la inscripción, es menester resaltar que la finca debe estar *inmatriculada al momento*

*de inscribir la hipoteca.* Se tomará por inscripción de los derechos reales la fecha de presentación, es decir, que una vez calificado se retrotrae a la fecha de solicitud. Así, amparados en el principio de que primero en tiempo primero en derecho, se determina el asiento que marcará el rango de la inscripción. Por ejemplo, si se presentaran dos (2) hipotecas el mismo día, la que se presentó primero y tenga un asiento primero tendrá rango superior de inscripción, sin importar la fecha de otorgamiento de la escritura.

Mientras que, con la modificación de la hipoteca es sabido que estas son subsidiarias y, por tanto, accesoria a la hipoteca que se busca modificar. Por lo que, si una hipoteca no cobra vida jurídica por no presentarse oportunamente, no puede constituirse tampoco la inscripción de una modificación de hipoteca. Esto es así ya que, en el presente caso, la hipoteca se presentó al Registro de la Propiedad **el 7 de noviembre de 2007, con asiento 787 al Diario 237 de Carolina III.** No se calificó ni las partes le dieron continuidad a este asiento. Eventualmente, **el 19 de mayo de 2011 se presentó solicitud para inmatricular la finca en cuestión, con el correspondiente Asiento 1113 del Diario 250 de Carolina III.** Por último, presentaron el escrito de modificación de hipoteca el 29 de agosto de 2011 al Registro de la Propiedad Carolina III, siéndole asignado el Asiento 1130 del Diario 251. Es decir, que el Registrador debía calificar primero el Asiento 787 del Diario 237, de la hipoteca y luego el Asiento 1113 del diario 250, el de inmatriculación.

Sin embargo, a pesar de los asientos asignados, el Registrador calificó los asientos otorgándole a la inmatriculación el rango de primera inscripción y a la hipoteca el de segunda inscripción. Esto fue así aun cuando la hipoteca se presentó primero en tiempo. De haberlo hecho correctamente, al calificar los asientos en el orden de presentación, no corresponde la inscripción de la hipoteca toda vez

que la finca no existía el 7 de noviembre de 2007, al retrotraerse. Tampoco procedía la inscripción de una modificación de una hipoteca sin vida jurídica. De esta manera, el acreedor no tiene causa de acción real sobre la propiedad abandonada aun cuando se hallare fuera del caudal de quiebras. Al no poder inscribirse el instrumento, el acreedor solo posee un crédito personal escriturario. Sin embargo, al encontrarse el deudor bajo la jurisdicción del Tribunal de Quiebras con paralización automática, tampoco procede la acción personal.

Expuestos los hechos y el derecho aplicable, entendemos menester señalar que la desestimación del Tribunal no responde a un desconocimiento de las acciones de naturaleza *IN REM* en nuestro ordenamiento. Responde, más bien, a la imposibilidad del acreedor de poseer causa de acción personal contra el deudor y causa de acción real (*IN REM*) contra el inmueble. Sobre la causa de acción personal por encontrarse en paralización automática bajo la jurisdicción del Tribunal de Quiebras, la parte apelante argumentó que el Tribunal de Quiebras autorizó al Banco a "continuar con el procedimiento de epígrafe".[28]

Ahora bien, dicha autorización no responde a que el Tribunal de Quiebras haya visto el caso en sus méritos ni, mucho menos, adjudicado sobre los hechos y la calificación del Registrador. Más bien, responde a un hecho que este Tribunal valida y reconoce: que la propiedad fue abandonada por el síndico, quedando fuera del caudal de quiebras. Esto permite, en teoría, que quién tenga causa de acción real pueda ir contra la propiedad. Sin embargo, en el caso ante nos, hemos expresado que no puede existir causa de acción real por no haberse presentado oportunamente la inscripción de la hipoteca.

---

[28] Apéndice del Recurso de Apelaciones, pág. 3.

Por tanto, no habiendo ignorado la existencia de las acciones *IN REM* en nuestro ordenamiento, ni desestimar bajo la creencia de que la propiedad se encontraba dentro del caudal de quiebras, el TPI- Carolina *no cometió los errores señalados* por el apelante.

**B.**

La parte apelante plantea, como *tercer señalamiento de error,* que erró el Tribunal de Primera Instancia al determinar la desestimación de la sentencia sumaria. *No le asiste la razón* a la parte apelante.

El mecanismo de sentencia sumaria es un vehículo para asegurar una solución justa, rápida y económica de un caso. Dicho mecanismo permite a los tribunales disponer de litigios civiles en aquellas situaciones en las cuales no exista controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita. De manera que, no habiendo controversia de hechos relevantes, puede el Tribunal emitir sentencia de manera sumaria resolviendo conforme a derecho, que incluye *la desestimación del recurso.*

Lo anterior no significa que, por no encontrarse controversia de hechos, automáticamente le asiste la razón al promovente de la Sentencia Sumaria. Si no que, a petición de partes, le permite al tribunal atacar directamente las controversias de derecho y resolver de manera sumaria, sin la celebración de una vista en su fondo. En el caso ante nos, no existe controversia de hechos relevantes, lo que al amparo de la Regla 36 de Procedimiento Civil, supra, permite al foro primario desestimar de manera sumaria, resolviendo una controversia estrictamente de derecho. Así lo hizo el foro primario y lo válida el foro apelativo tras un análisis del derecho aplicable.

Habiendo resuelto dentro del marco de nuestro estado de derecho, el TPI-Carolina no cometió el error señalado por el apelante.

## IV.

Por los fundamentos que anteceden, *confirmamos* la sentencia apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

El Juez Sánchez Ramos disiente con voto escrito.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones

Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| ORIENTAL BANK<br><br>Demandante-Apelante<br><br>v.<br><br>ALVIN YAMIR DIAZ PAGÁN<br><br>Demandado-Apelado | KLAN202300556 | Apelación Procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Civil Núm.: CA2019CV02650<br><br>Sobre: Ejecución de Hipoteca (IN REM) |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Rivera Torres y el Juez Pérez Ocasio.

## OPINIÓN DISIDENTE DEL JUEZ SÁNCHEZ RAMOS

Erró el Tribunal de Primera Instancia ("TPI") al desestimar una acción de ejecución de una hipoteca que ya estaba inscrita al momento en que se descargó en la corte de quiebra la deuda garantizada. Tampoco se afectó la validez del crédito hipotecario por el hecho de que, al presentarse la escritura de hipoteca, todavía no se hubiese presentado ante el Registro de la Propiedad (el "Registro") la escritura de individualización y compraventa del apartamento hipotecado, otorgada el mismo día en que se otorgó la escritura de hipoteca. Veamos.

Como consecuencia de que el Registro, en el 2019, determinó que procedía la inscripción de la escritura de hipoteca presentada en el 2007, como cuestión de derecho, la hipoteca se considera inscrita desde el 2007. Ello pues la fecha de la inscripción es, para todos los efectos, la fecha de la presentación. Artículo 53 de la derogada Ley Núm. 198 de 8 de agosto de 1979, según enmendada, conocida como Ley Hipotecaria y del Registro de la Propiedad, 30



LPRA sec. 2256.[1] Por tanto, cuando se presentó la acción de quiebra (mucho después del 2007), ya la hipoteca estaba inscrita.

Adviértase, además, que la norma bien establecida es que la viabilidad de la acción de ejecución de hipoteca no se afecta por el hecho de que la deuda garantizada, como consecuencia de un proceso federal de quiebra, ya no pueda ser recobrada en contra de ciertos bienes personales del deudor. Sobre dicho tema, la Corte Suprema de Estados Unidos ha expuesto que:

> [a] defaulting debtor can protect himself from personal liability by obtaining a discharge in a Chapter 7 liquidation. See 11 U.S.C. § 727. However, such a discharge extinguishes only "the personal liability of the debtor." 11 U.S.C. § 524(a)(1). Codifying the rule of Long v. Bullard, 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886), the Code provides that a creditor's right to foreclose on the mortgage survives or passes through the bankruptcy. *Johnson v. Home State Bank*, 501 US 78, 82-83 (1991). (citas omitidas).

La Corte Suprema razonó que:

> The Court of Appeals thus erred in concluding that the discharge of petitioner's personal liability on his promissory notes *constituted the complete termination of the Bank's claim against petitioner. Rather, a bankruptcy discharge extinguishes only one mode of enforcing a claim —namely, an action against the debtor in personam— while leaving intact another—namely, an action against the debtor in rem. Íd.*, pág. 84. (énfasis suplido).

Por tanto, a pesar de que se haya descargado en un proceso de quiebras la obligación personal de un deudor, el acreedor hipotecario continúa teniendo disponible la acción *in rem* contra el inmueble que se ofreció en garantía.

Por otro lado, y contrario a lo que arguye la parte demandada, no tiene pertinencia que la escritura de hipoteca se hubiese presentado ante el Registro en el 2007, antes de que se presentase, en el 2011, la escritura de individualización y compraventa del



---

[1] El Artículo 19 de ley vigente (Ley 210-2015), según enmendada, conocida como la Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico, 30 LPRA sec. 6133, contiene, en esencia, el mismo lenguaje.

apartamento hipotecado.    Adviértase que ambas escrituras se otorgaron el mismo día.

Por tanto, en este contexto, el Registrador tenía la autoridad, y el deber, de inscribirlas en el orden apropiado, pues no se afectan derechos de terceros, y el Registrador tenía todos los documentos pertinentes ante sí para que las inscripciones se hicieran con el tracto debido y de conformidad con el orden lógico de las transacciones entre las partes.

En efecto, la norma es que, "[e]n caso de documentos armónicos **no presentados en el orden en que deban ser inscritos** ... [,] se inscribirá el que corresponda según lo dicte el tracto." Artículo 17.1 de Reglamento General para la Ejecución de la Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico, Reglamento Núm. 8814, de 31 de agosto de 2016, según enmendado (énfasis suplido).[2]

Por tanto, actuó correctamente el Registrador en el 2019 al inscribir, en primer orden, la escritura de individualización y compraventa de 2007, seguida, en lo pertinente, de la hipoteca del 2007 y de su modificación de 2011. Apéndice a las págs. 227H a 227L. Como al ordenarse la inscripción de la hipoteca, estaba también presentada la individualización y compraventa del apartamento, y como la escritura de hipoteca no se otorgó antes de la escritura de individualización y compraventa, no se afecta la



---

[2] Así lo disponía también la reglamentación correspondiente a la ley hipotecaria anterior. Véase Artículo 69.1 del Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad, Reglamento Núm. 2674 de 9 de julio de 1980, según enmendado (énfasis suplido):

> En caso de que se haya inscrito o anotado un título indebidamente en un asiento posterior al que le corresponda por razón de que su presentación sea posterior a otro también inscrito, se atenderá a la fecha de la presentación para determinar el rango de cada uno, excepto cuando sea absolutamente incompatibles ambos títulos sobre la finca.
>
> **En caso de documentos armónicos no presentados en el orden en que deban ser inscritos no habrá que retirar el primero sino que se inscribirá el que corresponda según lo dicte el tracto.**

validez de la operación registral realizada por las fechas particulares en que se presentaron las referidas escrituras.

En fin, no existe planteamiento técnico-jurídico válido, ni razón ulterior de política pública, que justifique relevar al demandado de los efectos de la garantía real que acordó ofrecer en conexión con el préstamo que obtuvo. Ni el descargo de la deuda en la corte de quiebra, ni el orden de presentación en el Registro de la compraventa e hipoteca otorgadas el mismo día, afectan la capacidad del acreedor hipotecario para exigir la ejecución del gravamen en este caso.

Por los anteriores fundamentos, disiento.

En San Juan, Puerto Rico a _17_ de septiembre de 2024.

Hon. Roberto Sánchez Ramos
Juez de Apelaciones