Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| BAUTISTA REO PR CORP.<br><br>PETICIONARIO<br><br>v.<br><br>ÁNGEL LUIS MORANDEIRA ORSINI Y OTROS<br><br>RECURRIDOS | TA2025CE00690 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm. BY2021CV01711<br><br>Sobre: Ejecución de Hipoteca; Propiedad Residencial |

Panel integrado por su presidenta, la Juez Lebrón Nieves, el Juez Pagán Ocasio y la Jueza Álvarez Esnard.

Pagán Ocasio, juez ponente

## SENTENCIA

En San Juan, Puerto Rico, a 18 de noviembre de 2025.

### I.

El 29 de octubre de 2025, Bautista REO PR Corp (Bautista o peticionario) presentó digitalmente una *Petición de Certiorari* en la que solicitó que revoquemos la *Orden* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI o foro primario), el 26 de septiembre de 2025, notificada y archivada digitalmente en autos el 30 de septiembre de 2025.[1] Mediante dicho dictamen, el TPI denegó la solicitud de ejecución de sentencia presentada por Bautista dado que la Sentencia en cuestión había sido dictada *in rem*.

El 31 de octubre de 2025, emitimos una *Resolución* en la que concedimos a la parte recurrida hasta el 10 de noviembre de 2025 para exponer su posición respecto a los méritos del recurso.[2]

---

[1] Véase entrada núm. 49 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC-TPI).
[2] Véase entrada núm. 2 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC-TA).

El 10 de noviembre de 2025, el señor Ángel L. Morandeira Orsini, la señora Gloria M. Rosa Ortiz y la Sociedad Legal de Gananciales que ambos componen (parte recurrida) presentaron una *Oposición a expedición de auto de Certiorari.* Por medio de ésta, solicitaron que deneguemos la expedición del recurso por entender que la petición carece de mérito.[3]

Con el beneficio de la comparecencia de las partes, damos por perfeccionado el recurso. En adelante, pormenorizamos los hechos procesales pertinentes a la atención de la petición de *certiorari.*

**II.**

El caso de marras tuvo su génesis el 4 de mayo de 2021, cuando Bautista Cayman Asset Company[4] —ahora, Bautista REO PR Corp.— presentó una *Demanda* sobre cobro de dinero y ejecución de hipoteca en contra de la parte recurrida.[5] En síntesis, alegó que la parte recurrida suscribió un pagaré hipotecario a favor de First Security Mortgage, Inc., mediante el cual le concedió un préstamo hipotecario. En garantía de dicho pagaré, la parte recurrida otorgó una escritura de hipoteca que se constituyó sobre el inmueble de su propiedad. La parte peticionaria adujo ser la tenedora de buena fe del pagaré hipotecario y que la parte recurrida incumplió con los términos del préstamo, por lo que declaró vencida y exigible la totalidad del préstamo. Indicó que los esfuerzos para lograr el cumplimiento de la obligación resultaron infructuosos por lo que solicitó que se dictase sentencia en contra de la parte recurrida. Solicitó, además, que, de no satisfacerse el importe de la sentencia, se ejecutara mediante la venta del inmueble en pública subasta.

---

[3] Íd., entrada núm. 6.

[4] El 16 de enero de 2023, Bautista Cayman Asset Company presentó una *Moción en sustitución de parte demandante,* en la que informó que el crédito hipotecario objeto de ejecución en este caso fue transferido a Bautista REO PR Corp. Por lo cual, solicitó la sustitución de la parte demandante a Bautista REO PR Corp., quien es el actual tenedor de buena fe del pagaré. El 18 de enero de 2023, el TPI autorizó mediante *Orden* la sustitución. Véase, entradas núm. 20 y 21 en SUMAC-TPI.

[5] Íd., entrada núm. 1.

Bautista expuso que, al 30 de abril de 2021, la parte recurrida le adeudaba las siguientes sumas: $191,508.36 de principal; intereses en la cantidad de $101,457.14, los cuales se acumulan mensualmente hasta el saldo total de la deuda; $2,480.53, por concepto de cargos por mora los cuales continúan acumulándose hasta el saldo de la deuda; la cantidad de $3,939.00, por gastos de valoración; más la suma de $21,250.00, por concepto de honorarios de abogado.

Posteriormente, el 3 de agosto de 2021, Bautista presentó una *Solicitud de paralización de procedimientos*.[6] Informó, que la parte recurrida presentó una petición bajo el Código de Quiebras federal, 11 U.S.C.A. sec. 101 *et seq,* ante el foro federal. Por lo cual, solicitó la paralización de los procedimientos y el archivo administrativo hasta que se levantara la paralización o se desestimara el caso.

Consecuentemente, el 4 de agosto de 2021 el TPI emitió una *Sentencia* decretando la paralización de los procedimientos y ordenando su archivo sin perjuicio, sin imposición de costas, gastos ni honorarios de abogado.[7] El foro primario se reservó jurisdicción para decretar la reapertura del caso, a solicitud de parte interesada, en caso de que la orden de paralización fuera dejada fin efecto y ésta acuda dentro de los sesenta (60) días de advenir final y firme dicha disposición del Tribunal de Quiebras, o que por otra razón proceda la continuación de los procedimientos. En contrario, si la reclamación quedase totalmente adjudicada ante el Tribunal de Quiebras se consideraría definitivo el dictamen.

Luego, el 10 de noviembre de 2021, Bautista presentó una *Moción solicitando continuación del trámite judicial in rem.*[8] Informó, que el 10 de septiembre de 2021, las partes de epígrafe presentaron

---

[6] Íd., entrada núm. 11.
[7] Íd., entrada núm. 12. Notificada y archivada digitalmente en autos en la misma fecha.
[8] Íd., entrada núm. 13.

una estipulación ante el Tribunal de Quiebras. Mediante esta, solicitaron levantar la paralización automática para que Bautista pudiese continuar con el caso ante el TPI de ejecución *in rem,* la cual fue concedida por el foro federal el 5 de octubre de 2021. Por ello, solicitó al TPI la continuación de los procedimientos en cuanto a la ejecución de la hipoteca.

El 7 de julio de 2022, el TPI emitió una *Resolución y Orden* en la que ordenó la reapertura y continuación de los procedimientos en el caso.[9]

Así las cosas, el 10 de agosto de 2022, Bautista presentó una moción solicitando que se declarara Ha Lugar la Demanda y se dictara Sentencia en rebeldía, determinando que la parte recurrida le adeuda las sumas reclamadas, junto con las costas, gastos y honorarios de abogado.[10]

El 11 de agosto de 2022, el TPI emitió una *Sentencia* en rebeldía y de forma *in rem* en la que declaró Ha Lugar la *Demanda*.[11] Por ello, estableció que Bautista sólo podía recobrar la misma mediante la ejecución del bien inmueble hipotecado.

Consecuentemente, el 20 de enero de 2023, Bautista presentó una *Moción solicitando Ejecución de Sentencia* para que el foro primario expidiera la Orden y el Mandamiento de ejecución de la *Sentencia* dictada el 11 de agosto de 2022 mediante la venta en pública subasta del inmueble gravado por la hipoteca.[12]

Así, el 21 de enero de 2023, el TPI emitió *una Orden sobre ejecución de sentencia y venta de bienes* en la que declaró Ha Lugar la solicitud de la parte peticionaria.[13]

---

[9] Íd., entrada núm. 16. Notificada y archivada digitalmente en autos el 8 de julio de 2022.
[10] Íd., entrada núm. 18.
[11] Íd., entrada núm. 19.
[12] Íd., entrada núm. 22.
[13] Íd., entrada núm. 23.

Celebrada la venta en pública subasta, el 2 de mayo de 2023, el Alguacil informó al tribunal que se adjudicó la propiedad a Best Capital Funding LLC, por la suma de ciento seis mil doscientos cincuenta dólares ($106,250.00).[14]

El 15 de mayo de 2023, el TPI emitió una *Orden* de Retiro de Fondos para que la Unidad de Cuentas expidiera el cheque a favor de Bautista por la cantidad consignada de $106,250.00, más los intereses acumulados.[15] Ese mismo día, el TPI emitió una *Orden de confirmación de adjudicación o venta judicial.*[16]

Posteriormente, el 17 de junio de 2025, la parte recurrida presentó una *Moción solicitando la determinación de extinción de deuda de conformidad con la Sentencia.*[17] En esta, mencionó que Bautista presentó una nueva demanda en el caso ***Bautista REO PR Corp. v. Ángel Luis Morandeira Orsini y otros***, BY2025CV01776[18], utilizando el mismo pagaré en que se fundamentó el caso de marras, para cobrar la deficiencia y/o obligación personal que fue renunciada en el mismo. Ante ello, solicitó al TPI que dictaminara, conforme a la *Sentencia* del 11 de agosto de 2022 que, con la venta judicial del inmueble, se satisfizo tanto la obligación real como la personal.

El 20 de junio de 2025, Bautista presentó una *Oposición a solicitud de determinación de extinción de deuda.*[19] Alegó que ha procedido con el cobro personal de las cantidades adjudicadas en la

---

[14] Íd., entrada núm. 29.

[15] Íd., entrada núm. 32. Notificada y archivada digitalmente en autos el 16 de mayo de 2023.

[16] Íd., entrada núm. 33. Notificada y archivada digitalmente en autos el 17 de mayo de 2023.

[17] Íd., entrada núm. 41.

[18] En este caso, Bautista presentó una demanda en cobro de dinero en contra de los recurridos de epígrafe. En síntesis, el TPI dictó Sentencia Final en la que denegó la consolidación con el caso de epígrafe (BY2021CV01711), en ese momento inactivo, y acogió la solicitud de desestimación presentada por los recurridos. El TPI ordenó a Bautista a presentar los remedios solicitados en el caso de epígrafe. En consecuencia, ordenó el archivo con perjuicio de ese caso. Véase, entrada núm. 14 en el caso BY2025CV01776 en SUMAC-TPI. Tomamos conocimiento judicial al amparo de la Regla 201 de Evidencia, 32 LPRA Ap. VI, R. 201.

[19] Véase, entrada núm. 45 en SUMAC-TPI.

Sentencia, debido a que la ejecución de hipoteca fue insuficiente. Además, adujo que la parte recurrida incumplió con su plan de pago confirmado bajo el Capítulo 13 del Código de Quiebras federal, *supra*, en el cual se comprometió a pagar cualquier deficiencia resultante de los procesos de ejecución de hipoteca. Según mencionó, el plan confirmado disponía que Bautista tenía que volver al Tribunal de Quiebras para reclamar el pago de la deficiencia. No obstante, expuso que, debido a la pérdida de jurisdicción del Tribunal de Quiebras, acudió al TPI mediante un caso nuevo en cobro de la deficiencia de la Sentencia del presente caso. Así las cosas, Bautista solicitó que se enmiende la referida Sentencia para que se permita su ejecución persona contra los bienes de los recurridos.

En específico, Bautista argumentó lo siguiente:

[…]

10. El **7 de octubre de 2021**, MORANDEIRA-ROSA radicó un plan enmendado bajo el Capítulo 13 plan fechado 7 de octubre de 2021, proponiendo 60 mensualidades de $435.00, para un plan base total de $26,100.00; proponiendo en la **Sección 3.5**, abandono de colateral a Bautista y a CRIM, **y cualquier deficiencia no asegurada resultando de la disposición de la colateral sería tratada en la Parte 5**; poniendo en la **Sección 3.7**, pago total (100%) de la reclamación asegurada del CRIM por la cantidad de $2,965.67; en la **Sección 4.3**, estimando pago pajo el plan de balance de honorarios a sus abogados de **$3,700.00**; en la **Sección 5.1**, pago prorrata a las reclamaciones no aseguradas sin prioridad del **100%, más 3.25%** de interés de la cantidad total de estas reclamación, estimando pago de **$6,417.55**; "si el caudal de los Deudores fuese liquidado bajo un Capítulo 7, las reclamaciones no aseguradas sin prioridad serían pagadas aproximadamente $55,539.00," **en el Tribunal Federal de Quiebras**.

[…]

28. **El 15 de enero de 2025**, Bautista-REO radicó Reclamación enmendada **#2-2, como no asegurada, por la cantidad de $230,302.34**, basada en la deficiencia en su préstamo resultante de la ejecución de su hipoteca sobre propiedad inmueble en la Urbanización Santa Juanita, Bayamón, Puerto Rico, **en el Tribunal Federal de Quiebras**.

29. El **19 de enero de 2025**, Bautista-REO radicó *Motion to Modify Confirmed Plan or Dismiss*, solicitando una enmienda

del plan bajo el Capítulo 13, alegando que la base del plan era insuficiente para el pago de las reclamaciones, debido a que la Reclamación enmendada #2-2 comprometía la suficiencia del plan; o la desestimación del caso, **en el Tribunal Federal de Quiebras**.

30. **El 29 de enero de 2025**, José R. Carrión, Chapter 13 Trustee, radicó *Trustee's Motion to Modify or Dismiss*, alegando que la base del plan era insuficiente para el pago de las reclamaciones, debido a que la Reclamación enmendada #2-2 comprometía la suficiencia del plan, **en el Tribunal Federal de Quiebras**.

31. **El 19 de marzo de 2025**, MORANDEIRA ROSA radicó *Motion Requesting Voluntary Dismissal*, **en el Tribunal Federal de Quiebras**.

32. **El 20 de marzo de 2025, el Honorable Tribunal Federal de Quiebras** emitió *Order Dismissing Case*, sin entrar orden de descargo. (Énfasis en el original).

El 20 de junio de 2025, el TPI emitió una *Orden* en la que declaró No Ha Lugar la solicitud presentada por la parte recurrida.[20]

Seguidamente, el 25 de septiembre de 2025, Bautista presentó una *Moción solicitando ejecución de sentencia en cobro de dinero*.[21] Adujo que, debido al desistimiento voluntario de la quiebra por la parte recurrida, no existe impedimento alguno para que la parte peticionaria continúe con el cobro del balance insatisfecho de la Sentencia, en la acción de cobro de dinero contra la parte recurrida y sus bienes. Por lo cual, solicitó la autorización del tribunal para que el caso continue de esa forma para que la parte peticionaria pueda recobrar el balance de la sentencia insatisfecho por la parte recurrida en contra de su persona y bienes.

El 26 de septiembre de 2025, el TPI emitió una *Orden* en la que declaró No Ha Lugar la solicitud de la parte peticionaria porque la Sentencia fue dictada *in rem*.[22]

Inconforme con dicha determinación del TPI, Bautista acudió ante nos y formuló los siguientes señalamientos de error:

---

[20] Íd., entrada núm. 46. Notificada y archivada digitalmente en autos el 23 de junio de 2025.

[21] Íd., entrada núm. 47.

[22] Íd., entrada núm. 49. Notificada y archivada digitalmente en autos el 30 de septiembre de 2025

PRIMER ERROR: "ERRÓ EL FORO A QUO AL INTERPRETAR QUE LA DOCTRINA DE COSA JUZGADA IMPEDÍA EL COBRO DE LA DEFICIENCIA CUANDO LA SENTENCIA IN REM DEL CASO BY2021CV01711 NO ADJUDICÓ NI EXTINGUIÓ LA OBLIGACIÓN PERSONAL DEL DEUDOR, SINO ÚNICAMENTE LIMITÓ LA FORMA DE EJECUCIÓN DURANTE LA VIGENCIA DE LOS PROCEDIMIENTOS DE QUIEBRA"

SEGUNDO ERROR: "ERRÓ EL FORO A QUO AL NO CONSIDERAR QUE EL DESISTIMIENTO VOLUNTARIO DEL DEUDOR DE SU PETICIÓN BAJO EL CAPÍTULO 13 ELIMINÓ EL IMPEDIMENTO LEGAL QUE JUSTIFICABA LA LIMITACIÓN IN REM, PERMITIENDO ASÍ EL COBRO PERSONAL DE LA DEFICIENCIA."

TERCER ERROR: "ERRÓ EL FORO A QUO AL DENEGAR LA CONSOLIDACIÓN DE LOS CASOS SIN CONSIDERAR QUE LA ECONOMÍA PROCESAL Y LA PREVENCIÓN DE DECISIONES CONTRADICTORIAS JUSTIFICABAN PLENAMENTE DICHA CONSOLIDACIÓN O, ALTERNATIVAMENTE, LA ENMIENDA DE LA SENTENCIA IN REM PARA PERMITIR LA EJECUCIÓN PERSONAL"

Bautista alegó que la limitación *in rem* de la *Sentencia* del 11 de agosto de 2022 no constituyó una adjudicación sobre extinción de la obligación personal, sino una limitación procesal temporal impuesta por el impedimento legal federal mientras la parte recurrida estuviera bajo la protección de quiebras. Asimismo, adujo que la causa de acción en cobro de dinero por la deficiencia es jurídicamente distinta de la acción de ejecución de hipoteca dado que surgió *ex post* facto basándose en hechos que no existían al momento de dictarse la Sentencia *in rem*. Además, expresó que la paralización automática que impedía las gestiones de cobro personales cesó con el desistimiento voluntario de los recurridos a la petición de quiebra. Así, adujo que, en este caso, no existe descargue federal que haya extinguido la obligación personal de los recurridos. De otra parte, alegó que el TPI erró en derecho al aplicar indebidamente la doctrina de cosa juzgada dado que la reclamación de deficiencia no pudo ser efectivamente litigada en el caso **BY2021CV01711**.

Por su parte, el 10 de noviembre de 2025, la parte recurrida presentó una *Oposición a expedición de Auto de Certiorari.* De entrada, adujo que el recurso peticionado no es otra cosa que una apelación tardía de dos sentencias finales y firmes de casos distintos y que los señalamientos de error nada tienen que ver con la orden de la cual Bautista recurre. Por ello, sostuvo que este Tribunal no tiene jurisdicción para atender el asunto. Aludió a que la moción de consolidación fue presentada en un caso distinto y no en el de marras. Además, alegó que la parte peticionaria pretende enmendar una sentencia final y firme sin haber solicitado dicho remedio. Por último, adujo que no están presentes los requisitos para la expedición del auto de *certiorari* y sostuvo que la determinación del foro primario fue correcta.

En adelante, pormenorizaremos el derecho aplicable al presente recurso.

**III.**

**A.**

El auto de *certiorari* es un remedio procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. ***Medina Nazario v. McNeil Healthcare LLC***, 194 DPR 723, 728 (2016). Véase, además, ***IG Builders et al v. BBVAPR***, 185 DPR 307, 337 (2012). A diferencia de una apelación, el tribunal de superior jerarquía tiene la facultad de expedir el auto de *certiorari* de forma discrecional. ***Rivera Figueroa v. Joe's European Shop***, 183 DPR 580, 596 (2011).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R.52.1,[23] establece las instancias en las que el foro revisor posee autoridad

---

[23] Esta Regla dispone que:

El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de

para expedir un auto de *certiorari* sobre materia civil. ***Scotiabank v. ZAF Corp. et al.,*** 202 DPR 478 (2019). La citada regla delimita el alcance jurisdiccional del Tribunal de Apelaciones para atender un recurso de *certiorari* que se trate sobre la revisión de dictámenes interlocutorios del Tribunal de Primera Instancia. ***Mun. Caguas v. JRO Construction, Inc.***, 201 DPR 703 (2019).

Si el auto sobre el cual versa el recurso de *certiorari* está comprendido en una de las instancias establecidas en la Regla 52.1 de Procedimiento Civil, *supra,* debemos pasar entonces a un segundo análisis. El mismo se caracteriza por la discreción que ha sido conferida al Tribunal de Apelaciones para autorizar, expedir y adjudicar en sus méritos el caso.

Con el fin de que podamos ejercer de manera sabia y prudente nuestra facultad discrecional, la Regla 40 del Reglamento del Tribunal de Apelaciones, ***In re Aprob. Enmdas. Reglamento TA***, 2025 TSPR 42, págs. 59-60, 215 DPR __ (2025), establece los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*.[24]

---

Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios (sic), anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales.

[24] Esta Regla dispone lo siguiente:

El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

**B.**

La quiebra es un procedimiento regido por el Código de Quiebras federal, *supra,* sec. 101 *et seq.,* el cual constituye campo ocupado para evitar conflictos regulatorios entre la legislación federal y estatal. **Const. EE. UU**., Art. I, sec. 8, cl. 4; ***Marrero Rosado v. Marrero Rosado***, 178 DPR 476, 490 (2010). El propósito de la quiebra radica en brindarle al deudor la oportunidad de reiniciar su vida financiera, a la vez que se protegen los intereses de los acreedores. ***Allende Pérez v. García***, 150 DPR 892, 898 (2000). Para así lograrlo, la Sección 541 del Código de Quiebra, *supra,* dispone para la creación de un caudal en quiebra (*Bankruptcy Estate*) al comienzo de los procedimientos, consistente de toda la propiedad que estará sujeta a la jurisdicción de la Corte de Quiebra (*Bankruptcy Court*). Íd.

En lo pertinente, el Capítulo 13 del Código de Quiebras federal, *supra,* secs. 1301-1330, es el vehículo mediante el cual un individuo se acoge a un plan presupuestario para sus ingresos futuros en aras de satisfacer sus deudas a los acreedores. Mediante esta protección, el deudor somete a la supervisión de un síndico sus ingresos futuros para su efectiva administración. ***SLG Báez-Casanova v. Fernández***, 193 DPR 192, 201 (2015).

De otra parte, la Sección 362 del Código de Quiebras, *supra,* establece la paralización automática (*automatic stay*) de todo procedimiento o su actuación contra una persona o entidad que presenta una petición de quiebra ante la Corte de Quiebras. ***BPPR v. SLG Gómez-López***, 213 DPR 314, 330 (2023). Los efectos de la paralización se activan desde que se presenta la petición

---

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

de quiebra hasta que recaiga la sentencia final y no se requiere notificación formal para que surta efecto. ***Peerles Oil v. Hnos. Torres Pérez***, *186 DPR 239, 255 (2012);* ***Marrero Rosado v. Marrero Rosado***, supra, pág. 491. Esto también provoca que los tribunales estatales queden privados de jurisdicción automáticamente, e incluso, paraliza litigios que tengan poco o nada que ver con la situación financiera del deudor. ***Marrero Rosado v. Marrero Rosado***, supra.  La paralización estará vigente hasta tanto el caso presentado se culmine, se desestime o sea descargado, ya sean en los casos que sean al amparo del Capítulo 7, 9, 11, 12 y 13, respectivamente del Código de Quiebras, *supra*, sec. 362(c)(2).

Entre los remedios que ofrece el Código de Quiebras federal, un deudor tiene como alternativa de la liquidación provista en el Capítulo 7 del mencionado estatuto. 11 U.S.C.A. sec. 701 *et seq.* Mediante el Capítulo 7, el deudor obtiene un descargo, que tiene los siguientes efectos:

a)  A discharge in a case under this title-

(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived;

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; and

(3) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the commencement of the case, on account of any allowable community claim, except a community claim that is excepted from discharge under section 523, 1228(a)(1), or 1328(a)(1) ⊥ of this title, or that would be so excepted, determined in accordance with the provisions of sections 523(c) and 523(d) of this title, in a case concerning the debtor's spouse commenced on the date of the filing of the petition in the case concerning the debtor,

whether or not discharge of the debt based on such community claim is waived. *Íd.* sec. 524.

Al respecto, el Tribunal Supremo de Estados Unidos estableció que el descargo bajo el Capítulo 7 del Código de Quiebras federal extingue únicamente la responsabilidad personal del deudor, mas no la acción *in rem,* dirigida contra la cosa, que tenga el acreedor para recobrar su crédito. ***Johnson v. Home State Bank***, 501 US 78 (1991). Pues, una vez se interpone la petición de quiebra, los acreedores del deudor deben someter sus reclamaciones (*proof of claim*), según dispone la Sección 501 del Código de Quiebras, *supra,* sec. 501. No obstante, según mencionado antes, en caso de la desestimación de la petición de la quiebra, esta paralización automática termina inmediatamente. 11 U.S.C.A. 362(c)(2)(B).

**IV.**

En el caso de marras, Bautista nos solicita que revoquemos la determinación del foro primario que rechazó su solicitud de ejecución de sentencia a causa de que la misma fue dictada *in rem.*

Bautista sostuvo que el TPI erró en la aplicación del derecho, toda vez que, la parte recurrida no obtuvo un descargue federal de la petición de quiebra, razón por la cual no existe impedimento legal alguno para instar la acción personal. Expuso que la *Sentencia* del 11 de agosto de 2022 se dictó *in rem* por la paralización automática que impedía las gestiones de cobro personales y no porque se haya extinguido la obligación personal. Incluso, aludió a que la *Sentencia* adjudicó cantidad específica de $340,280.33, reconociendo la existencia y cuantía de la deuda total. Dado lo anterior, argumentó que constituyó una limitación de la forma de ejecución y no una extinción de la obligación en caso de que la venta judicial resultara insuficiente.

Para Bautista, el desistimiento constituyó una renuncia voluntaria a la protección de quiebra y eliminó el único impedimento legal que justificaba la limitación *in rem* de la Sentencia del 11 de agosto de 2022 del TPI. Adujo que el TPI ignoró ese hecho procesal fundamental y perpetuó una limitación que había perdido razón de ser, permitiendo que la parte recurrida utilizara su desistimiento voluntario para evadir el cumplimiento de su obligación personal.

En resumen, sostiene que, sin descargue, todas las deudas de la parte recurrida permanecen plenamente exigibles en su totalidad original por lo que la parte peticionaria puede ejercer todos sus derechos tanto reales como personales para cobrar sus créditos conforme la ley.

En cambio, para la parte recurrida el asunto se trata de una apelación tardía de dos sentencias finales y firmes y que Bautista no solicitó ni fundamentó una solicitud de enmienda a la sentencia como remedio. La parte recurrida mencionó, además, que Bautista fue quien solicitó que la Sentencia se dictara *in rem* por lo que no puede señalar error alguno por parte del TPI.

De conformidad con el derecho pormenorizado precedentemente, una vez un individuo presenta una petición de quiebra al amparo del Código de Quiebras federal, se detiene de manera automática la mayoría de los cobros contra el deudor o su propiedad. 11 U.S.C.A. sec. 362. Como norma general, la paralización mantiene toda su fuerza o vigor hasta que el caso generado por la petición de quiebra se desestime, cierre, deniegue o se releve al deudor de las deudas. Íd., sec. 362(c). En el caso de los deudores obtener un descargue, de resultar alguna deficiencia, la misma estaría protegida por la paralización automática que provee la Sección 362 del Código de Quiebras federal, *supra.*

El descargue tiene el efecto de limitar la forma y manera en que el acreedor puede recobrar su deuda. Ahora bien, en el caso de

marras, la parte recurrida <u>no</u> obtuvo una orden de descargue puesto que desistió de la petición de quiebras. Por tanto, no existe impedimento alguno por el cual parte peticionaria pueda cobrar la deficiencia resultante de la ejecución del pagaré asegurado por la hipoteca por medio de la venta del inmueble en pública subasta.

Según surge del expediente ante nuestra consideración, Bautista solicitó ante el Tribunal de Quiebras una modificación al plan de pago obtenido por la parte recurrida debido a la deficiencia en el cobro de su acreencia que resultó de la ejecución de hipoteca. Bautista allí esbozó que en dicho plan se reconoció, con respecto a su reclamación enmendada que cualquier deficiencia no asegurada resultante de la disposición de la colateral se trataría en la Parte 5 de dicho plan. Por ello, solicitó que, de no atenderse la situación por la parte recurrida, el Tribunal de Quiebras debía desestimar el caso. Subsiguientemente, la parte recurrida solicitó el desistimiento voluntario de la petición de quiebras.

Si bien las partes de epígrafe estipularon levantar la paralización automática para Bautista poder recobrar su acreencia de forma *in rem*, la parte recurrida no cumplió con el plan de pago y posteriormente, desistió de la petición de quiebra. Por esta razón, Bautista recurrió nuevamente al TPI en solicitud de ejecución de sentencia de la deficiencia mediante la causa de acción de cobro de dinero. El permitir que la parte recurrida no pague lo que adeuda, y a lo que se obligó, constituiría una injusticia.

Tras un análisis objetivo, sereno y cuidadoso del expediente y de la petición de *certiorari*, y a la luz de los criterios esbozados en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, resolvemos que debemos expedir el auto peticionado y revocar la determinación recurrida. En el caso de marras, determinamos que debemos ejercer nuestra facultad revisora con el propósito de

conceder una solución justa en derecho, pues concluimos que el TPI incurrió en error. La determinación recurrida es contraria a derecho.

Sabido es que, la acción de ejecución de hipoteca incluye la acción personal y la real, por ello se conoce como una de naturaleza mixta. ***Abrams Rivera v. ELA***, 178 DPR 914, 928 (2010); ***First Federal Savs v. Nazario, et als.***, 138 DPR 872, 879 (1995). Por ello, en nuestro ordenamiento jurídico, un acreedor puede escoger entre exigir el pago de la deuda mediante una acción en cobro de dinero a través de un requerimiento personal al deudor o mediante una acción solicitando la ejecución de la garantía hipotecaria. ***First Federal Savs v. Nazario, et als.***, supra, pág. 880.

Analizados los planteamientos esbozados por las partes, los documentos que conforman su apéndice y el derecho aplicable, concluimos que Bautista no está impedido para solicitar el pago total de la deuda, que no obtuvo mediante la ejecución *in rem*, por medio de una acción personal.

Además, la parte recurrida <u>no</u> obtuvo un descargue federal, pero <u>se obligó</u> al pago de la deficiencia no asegurada mediante el plan de pago sometido, y aceptado, por el Tribunal de Quiebras. Con la estipulación, se levantó la paralización de la acción real, pero con el desistimiento y la ausencia de descargue se levantó la paralización para la acción personal. Por tanto, en ausencia de impedimento legal, Bautista puede reclamar en cobro de dinero la cantidad adeudada. Durante el proceso ante el foro federal, Bautista obtuvo el permiso para solicitar la ejecución de la hipoteca, empero, no constituyó la extinción de la acción personal, sino que se mantuvo paralizada. Dicha paralización finalizó con la desestimación del caso ante el foro federal.

En virtud de todo lo anterior, resolvemos que el foro primario incidió al denegar la ejecución de sentencia solicitada.

**V.**

Por los fundamentos que anteceden, se expide el auto de *Certiorari* y se revoca la *Orden* recurrida. En consecuencia, se devuelve el caso al foro primario para que actúe conforme a lo aquí resuelto.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones